660 So.2d 7 (1995)
Chene RESWEBER
v.
HAROIL CONSTRUCTION COMPANY and Louisiana Construction & Industry Self Insurers Fund.
Roderick STORKS
v.
MANPOWER TEMPORARY SERVICES, et al.
Nos. 94-C-2708, 94-C-3138.
Supreme Court of Louisiana.
September 5, 1995.
*9 Steven C. Judice, Baton Rouge, Wayne H. Carlton, Jr., Bendana, Carlton & Sharp, New Orleans, for applicant.
Randy P. Angelle, Lawrence K. Burleigh, Jr., Lafayette, John E. Cox, Keogh, Cox & Wilson, Ltd., Baton Rouge, for respondent.
KIMBALL, Justice[*].
We granted writs in these consolidated cases to consider the appropriate interpretation and application of the anti-fraud provisions of the Louisiana Workers' Compensation Act, La.R.S. 23:1208 and 1208.1. We hold that each of these anti-fraud provisions serves a specific purpose and applies to different situations. Louisiana Revised Statutes 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits and therefore generally becomes applicable at the time of an employee's accident or claim. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. It contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. The purpose of La.R.S. 23:1208.1, however, is to allow the employer to ask prospective or current employees about prior injuries. It applies to employment-related questioning of an employee or prospective employee, by an employer, concerning a prior injury, when there is no pending workers' compensation claim. The statute results in the forfeiture of a claimant's workers' compensation benefits when that claimant made false statements concerning a prior injury in response to such an inquiry. For Section 1208.1 to be enforceable, written notice must be given to the employee that giving false statements may result in the forfeiture of workers' compensation benefits.
Because the two statutes serve separate purposes and apply to different situations, the requirements of each statute should not be imposed on the other, and more specifically, the notice requirement of La.R.S. 23:1208.1 should not be judicially engrafted into La.R.S. 23:1208. We further hold there need be no showing of prejudice on the part of the employer prior to the forfeiture of an employee's benefits under Section 1208. Accordingly, we reverse the third circuit court of appeal decision in Resweber v. Haroil Construction Co., 94-297 (La.App. 3d Cir. 10/5/94), 644 So.2d 423, and affirm the fifth circuit court of appeal decision in Storks v. Manpower Temporary Servs., 94-142 (La. App. 5th Cir. 11/29/94), 646 So.2d 1191.

I.

FACTS AND PROCEDURAL HISTORY

A. RESWEBER
Chene Resweber, an employee of Haroil Construction Company, which is owned by *10 his father, Paul Resweber, alleged that he was injured in the course and scope of his employment in an unwitnessed accident on July 17, 1991, when he slipped and fell at a tank farm. Resweber allegedly sustained herniated discs in his lower back. Louisiana Construction and Self Insurers Fund (Louisiana Insurers), which provided worker's compensation coverage for Haroil, paid benefits to Resweber through its third party administrator, Associated Risk Management Services (ARMS), through March of 1993, when it discontinued compensation benefits, alleging Resweber had made false statements in relation to his claim and thereby forfeited his rights to benefits pursuant to La.R.S. 23:1208.
The alleged misrepresentations were made in a recorded statement on August 21, 1992, pursuant to an investigation conducted by Louisiana Insurers into Resweber's entitlement to workers' compensation benefits. In this statement, Resweber denied any history of back injuries except for a minor muscle pull. He also made similar statements on June 8, 1993 to Dr. Franklin, one of Resweber's treating physicians. However, subsequently, Louisiana Insurers and ARMS discovered that Resweber had received medical treatment in 1989 for a lower back injury. The medical reports on this previous injury suggested Resweber had suffered from a herniated disc in his lower back.
Section 1208, as it existed at the time of Resweber's alleged false statements[1], provided:
§ 1208. Misrepresentations concerning benefit payments; penalty
A. If, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, any person, either for himself or any other person, willfully makes a false statement or representation, he shall be fined not more than five hundred dollars or imprisoned for not more than twelve months, or both.
B. In addition to the criminal penalties provided for in Subsection A of this Section, any person violating the provisions of this Section may be assessed civil penalties by the director of not less than one hundred nor more than five hundred dollars.
C. Any employee violating this Section shall, upon determination by a hearing officer, forfeit any right to compensation benefits under this Chapter.
The hearing officer found Resweber knew he had a possible herniated disc in July of 1989 and willfully and deliberately made false statements to Mr. Desselle, the investigator, and to Dr. Franklin. The hearing officer also concluded Resweber made these statements for the purpose of obtaining workers' compensation benefits. Accordingly, the hearing officer held Resweber was disqualified, under Section 1208, from receiving benefits for the alleged accident.
On appeal, the third circuit reversed the ruling of the hearing officer, relying on Section 1208.1. Section 1208.1 provides:

*11 § 1208.1 Employer's inquiry into employee's previous injury claims; forfeiture of benefits
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical condition are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
The court of appeal rejected Louisiana Insurers' and ARMS' reliance on Section 1208 to discontinue payments, instead holding that Section 1208 applies to fraudulent claims which are based on staged injuries or accidents, and that Section 1208.1 is the only means by which an employee could forfeit workers' compensation benefits based solely on false statements relating to a prior injury. Since there was no written notice as required by Section 1208.1, the court of appeal held defendants could not avail themselves of the forfeiture provisions of Section 1208.1 and remanded the case for a hearing on the merits of Resweber's claim for workers' compensation benefits. We granted Louisiana Insurers' application for writ of certiorari. 94-2708 (La. 2/9/95), 649 So.2d 413.

B. STORKS
Roderick Storks suffered a lower back injury in June of 1992 while employed by Coastal Ventures, Inc. Storks was treated by Dr. Poche on June 16, 1992 and again on June 23, 1992, at which time Storks was discharged to return to regular work. Storks subsequently acquired new employment with the defendant, Manpower Temporary Services (Manpower), in late August or early September, 1992, and on his employment application for Manpower, Storks indicated he had no physical or health conditions which would prevent him from performing any specific types of work. Storks continued receiving benefits from Coastal Ventures after obtaining employment with Manpower.
On September 3, 1992, while working for Manpower, Storks allegedly injured his back while lifting oxygen bottles. He was treated at River Parishes Hospital that same day. The next day, Storks returned to the emergency room at River Parishes Hospital and was sent to East Jefferson General Hospital where he was hospitalized for four days. After being discharged from East Jefferson, Storks remained under the care of Dr. Miranne until October of 1992, when Manpower's workers' compensation insurer refused to pay any further medical bills.
Manpower alleges Storks misrepresented his medical history in two recorded statements given to a claims adjuster for Continental Casualty Company, Manpower's workers' compensation insurer. In the first statement, given September 14, 1992, Storks denied having any prior workers' compensation accident or prior lower back injury. Continental Casualty then commenced paying workers' compensation benefits. On October 10, 1992, the insurance adjuster took a second statement in which Storks again denied having any prior back injuries and also denied having ever been employed by Coastal Ventures, Inc. Subsequently, upon discovering these misrepresentations, Continental Casualty terminated Storks' workers' compensation benefits and filed a motion to disqualify Storks from benefits under Sections 1208 and 1208.1.[2]
The hearing officer dismissed Storks' claim, finding he had made misrepresentations as set forth in La.R.S. 23:1208.[3] The *12 fifth circuit affirmed, rejecting Stork's argument that because Section 1208 and 1208.1 are penal in nature, they apply only when an employer suffers an irreparable harm or prejudice. The court of appeal found the language of the anti-fraud statutes to be clear and unambiguous in their terms, and applicable without a showing of prejudice against an employer. Furthermore, the court of appeal stated that even if a finding of prejudice were required, Manpower satisfied such a showing, although it did not elaborate as to how Manpower was harmed. We granted Storks' application for writ of certiorari. 94-3138 (La. 2/9/95), 649 So.2d 413.

II.
At issue in this case is the interpretation of La.R.S. 23:1208 and 1208.1, the anti-fraud statutes, vis-a-vis each other. The third circuit in Resweber held that any statement concerning a prior injury, even when made after a claim had been filed and even when made for the purpose of obtaining benefits had to meet the requirements of Section 1208.1, including the notice requirement, rather than those of Section 1208. After a careful reading of the statutes and a thorough review of their legislative history, we Conclude the third circuit erred in its interpretation.
Section 1208 is clear and unambiguous and as such will be applied as written. La.Civ.Code art. 9; La.R.S. 1:4. Section 1208 clearly applies to any willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment." Section 1208 has no language limiting it to only certain types of false statements, i.e., statements other than those relating to prior injuries. The legislature has imposed no notice requirement in Section 1208, apparently being of the opinion that any claimant should be on notice that false statements made willfully for the purpose of obtaining workers' compensation benefits will not be tolerated and will result in the forfeiture of those benefits. The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.
Our conclusion is further buttressed by the legislative history of Sections 1208 and 1208.1. The history of Section 1208 indicates a clear legislative intent to prevent and discourage fraud in relation to workers' compensation claims, and Section 1208 should not be subjected to a strained interpretation which would undercut that legislative intent. Prior to 1989, Section 1208 required a criminal conviction under its provisions before the employee forfeited his benefits. However, the legislature eliminated the necessity of a criminal conviction as a prerequisite for a claimant's forfeiture of benefits by amending Section 1208 to require only a "violation" of the Section. 1989 La. Acts No. 454. Thus, the legislature chose to make it easier to establish grounds for a claimant's forfeiture of benefits. H. Alston Johnson, Workers' Compensation, Developments in the Law, 50 La.L.Rev. 391, 401 (1989). A 1992 amendment to Section 1208 added civil penalties to the criminal penalties and made clear that a hearing officer is to determine whether a claimant violated the section, resulting in the disqualification from receiving benefits.[4] 1992 La. Acts No. 763. See generally, Denis Paul Juge, Louisiana Workers' Compensation § 6:3 (1995). The legislature has determined workers' compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the penalties stiffer. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in *13 forfeiture of those benefits, and this legislative intent cannot be ignored.
Furthermore, the legislative history of Section 1208.1 indicates that statute was in no way intended to undercut the applicability of Section 1208 to any false claims made specifically for the purpose of obtaining benefits. Section 1208.1 was not enacted until 1988, whereas Section 1208 existed (in a different form) since the original enactment of the Workers' Compensation Act in 1914. If the legislature had intended to affect the applicability of Section 1208 when they enacted Section 1208.1, it could have specifically done so.
Also, when originally enacted, Section 1208.1 contained no forfeiture provision at all, but merely stated: "Nothing in this Title shall prevent an employer from inquiring about previous workers' compensation claims paid to the employee while said individual was employed by a previous employer, and the employee shall answer truthfully." It appears the legislature, in initially enacting Section 1208.1, was simply making clear that an employer may inquire about previous claims.[5] It in no way evidenced any intent by the legislature to affect the applicability of Section 1208. By enacting this language into law it cannot seriously be said that the legislature intended to eliminate the forfeiture of benefits penalty for a false statement made for the purposes of obtaining benefits, merely because that statement pertained to a prior injury.
Neither can it be said the legislature intended to do so when it amended Section 1208.1 into its current form. The 1989 amendment to Section 1208.1 included a forfeiture of benefits provision and specifically included a notice requirement. The inclusion of a notice requirement in Section 1208.1, but not in Section 1208, indicates the legislature felt that fairness and equity required the employee be put on notice of the consequences of his false statement, i.e. forfeiture of benefits, in a situation in which Section 1208.1 applies, but not when Section 1208 applies. The question, then, is what is the difference between the two provisions such that notice is required in one situation but not in the other? The third circuit's interpretation, in essence, suggests the legislature believed that fairness required an employee be given notice that forfeiture of benefits will result from a false statement if that statement pertained to prior injuries, even if that statement was made after a claim was filed. We cannot believe the legislature felt that a claimant making a false statement concerning a prior injury, after a claim is made, is in a vulnerable or unknowing position such that notice of the consequences of such a statement is required, but that a claimant making any other false statement after a claim is made, needs no such notice. It seems more plausible that the legislature intended that where one is given a questionnaire, concerning prior medical history, by his employer or prospective employer, not in the context of any pending workers' compensation claim, the employee may be in a position of trying to obtain or maintain employment and would not readily appreciate that giving a false statement at that point in time will have consequences on a subsequent workers' compensation claim, and therefore notice of such is required. See Alexander v. Conagra Broiler Co., 93-1671, pp. 4-5 (La.App. 3rd Cir. 7/13/94), 641 So.2d 621, 623-24; Pickett v. Stine Lumber Co., 93-1534, pp. 3-4 (La.App. 3rd Cir. 6/1/94), 640 So.2d 769, 771. In other words, the critical consideration of the legislature in requiring notice in Section 1208.1 and not in Section 1208, was not the type of false statement made, but rather the timing of the statement and the context in which it is made. If the false statement is directly made in relation to a claim for the purpose of fraudulently obtaining benefits, no notice should be required, and Section 1208 accordingly requires no notice. However, where the false statement is made at a time prior to any workers' compensation claim, and arises in a context completely unrelated to workers' compensation, an employee may not be aware of the full ramifications of giving a false statement and, accordingly, the *14 legislature, in Section 1208.1, imposed a notice requirement in such a situation.
We therefore hold that Section 1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made willfully by a claimant for the purpose of obtaining benefits, and thus is generally applicable once an accident has allegedly occurred and a claim is being made. Section 1208.1, on the other hand, applies to false statements or misrepresentations made pursuant to employment-related inquiries regarding prior medical history such as in an employment application or some post-employment questionnaire and not to statements made in relation to a pending claim.[6]

III.
Given the correct interpretation of Sections 1208 and 1208.1, we now turn to the application of these anti-fraud provisions to the cases at hand.

A. RESWEBER
Pursuant to agreement by the parties, this matter was submitted on the briefs without a hearing. The hearing officer found Resweber had deliberately and willfully made false statements for the purpose of receiving workers' compensation benefits in violation of La.R.S. 23:1208, and thereby forfeited his rights to workers' compensation benefits. The court of appeal erroneously applied Section 1208.1 and reversed the hearing officer since the required notice was not given. As has already been explained, this was error. The mere fact that the statements concerned a prior injury does not make Section 1208.1 applicable. The only requirements for disqualification under Section 1208 are: 1) a false statement or representation, 2) which is willfully made, and 3) which is made for the purpose of obtaining workers' compensation benefits. If these requirements are met, Section 1208 applies and its forfeiture provisions must be enforced.
Resweber argues the hearing officer erroneously found he willfully made false statements. The evidence shows Resweber was treated by Dr. Clifton W. Shepherd, Jr., an orthopedist, for his July 17, 1991, alleged on-the-job injury, and was diagnosed with herniated discs at L4-5 and L5-6. The alleged accident was reported to ARMS, and Dr. Shepherd began sending reports and bills to ARMS and receiving payments from them. ARMS began paying weekly benefits to Resweber. Subsequently, ARMS filed a Disputed Claim for Compensation. Pursuant thereto, Pete Desselle, an investigator for Gulf South Risk Management, a workers' compensation administrator, took a recorded statement from Resweber on August 21, 1992, in which Resweber's father participated. In this statement, Resweber was asked more than once about prior injuries and specifically about sports related injuries, but he denied ever having any back injury other than a pulled muscle. Furthermore, Resweber, in his medical history given on June 8, 1993 to Dr. Franklin, indicated he had been healthy, denied prior serious medical problems, and denied having unbearable intermittent low back pain with left lower extremity symptoms below the knee to the ankle prior to July 17, 1991.
However, as found by the hearing officer, the statements given by Resweber to Mr. Desselle and Dr. Franklin concerning his prior medical history are contradicted by the evidence. On October 19, 1988, Resweber was first treated by Dr. Kenneth Leon Fournet who reported Resweber had a two month history of low back pain with radiating pain into the right leg, an injury which he incurred as a result of weight lifting. He was later treated by Dr. Douglas A. Bernard, in July of 1989. Dr. Bernard's report of July 18, 1989 states:
[Chene Resweber is] a 17 year old white male who was referred by Dr. Kenneth Fournet in St. Martinville. Chene is a student who was brought in by his mom and dad. Chene has been having troubles *15 with his lower back and pain in his legs, mostly with the left leg and stiffness, since about last August until recently. He got along through the year at school, but he had troubles sitting in class all day, and things of this nature. He was starting to get a little better, then for the last two weeks, he's had alot [sic] of problems with pain in his leg. He attributes this to when he was working out with weights, last August, doing some squats and things of this nature, he first noticed this. It progressed throughout the year, and then recently he did some heavy lifting up on a tongue of a trailer and exacerbated things. He feels like he's in a lot of discomfort.
. . . . .
My impression would be that we are dealing with a lumbar disc with a radiculopathy of the left side. More than likely at the L4-5. Things are described and discussed in some detail. If this should persist, in spite of continued conservative treatment, then we will need to have some further test [sic] done, i.e., MRI scan and possibly CAT Scan. Family will keep in touch with me and let me know what happens. They were instructed in activities, abdominal strengthening exercises, etc....
The hearing officer found it significant that Resweber was tentatively diagnosed with a herniated disc at L4-5 by Dr. Bernard in July of 1989 and that at that time Resweber's symptoms had been persisting for almost a year and that Dr. Shepherd, subsequent to Resweber's alleged July 17, 1991, on-the-job injury, diagnosed him with herniated discs at L4-5 and L5-6. The hearing officer also found it significant that both of Resweber's parents accompanied him to Dr. Bernard's office in July of 1989 and that his condition was "described and discussed in detail." The hearing officer then concluded that both Resweber and his parents knew that he had a possible herniated disc in his lower back as early as July of 1989. The hearing officer rejected Resweber's assertions that he did not make any willful misrepresentations because "[m]aybe he just didn't remember." The hearing officer stated: "The Court observes that the kind of pain incurred by those with herniated discs is not easily forgettable, and finds it incredible to believe that Resweber could not remember in August of 1992, the pain he described to Dr. Bernard in 1989." The hearing officer therefore concluded that Resweber's failure to disclose to Mr. Desselle and Dr. Franklin that he had a possible herniated disc was deliberate and willful. The hearing officer went on to find the claimant intended to obtain workers' compensation benefits on the basis of his false statements.
Thus, the hearing officer found that all the requirements of Section 1208 were met: 1) Resweber made false statements concerning his prior back injury; 2) these statements were made willfully and deliberately; and 3) these statements were made for the purpose of obtaining workers' compensation benefits. The hearing officer thus held Resweber disqualified from the receipt of workers' compensation benefits. After a thorough review of the record, we find the hearing officer was not in error. Accordingly, we reverse the third circuit court of appeal and reinstate the judgment of the hearing officer.

B. Storks
The facts of Storks' misrepresentations are not in dispute. Storks willfully misrepresented his medical history for the purpose of obtaining workers' compensation benefits. Mr. Storks injured his lower back while employed with Coastal Ventures in June, 1992, and was treated by Dr. Poche on June 16 and 23, 1992. He subsequently obtained employment with Manpower, and on his employment application Storks falsely denied having previously worked for Coastal Ventures, Inc. and indicated he did not have any physical or health condition which would prevent him from performing any specific types of work. Storks continued receiving benefits after obtaining employment with Manpower.
Storks allegedly injured himself again on September 3, 1992, while working for Manpower. Following this injury he gave two false statements denying having any prior back injury and denying having worked for Coastal Ventures. Storks does not deny that he made misrepresentations for the purpose of obtaining workers' compensation benefits. The hearing officer found Storks had indeed made these misrepresentations and dismissed *16 Storks' claim pursuant to Section 1208. The court of appeal affirmed. Storks makes two arguments: 1) he was not given notice pursuant to Section 1208.1; and 2) if Section 1208 does apply, it requires a showing that the employer was prejudiced by the false statements. The first argument, as has already been explained, has no merit.[7]
Turning to the second argument, we conclude that it also lacks merit. As noted previously, Section 1208 is clear and unambiguous, and as such will be interpreted as written. La.C.C. art. 9; La.R.S. 1:4. Section 1208 imposes no requirement that the employer be prejudiced. By its plain words, Section 1208 requires only that 1) the claimant make a false statement or representation, 2) the statement or representation be willfully made, and 3) the statement or representation be made for the purpose of obtaining workers' compensation benefits.
The legislature has made a policy decision that willful and deliberate false statements made specifically for the purpose of obtaining workers' compensation benefits is an attempt to defraud the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over recent years to make Section 1208 easier to enforce and to make its penalties stronger. To add a requirement to its provisions that has not been included by the legislature would go against this clear legislative intent.
Further, the legislature has imposed different requirements under Section 1208, which deals with false statements made specifically for the purpose of obtaining benefits, than under Section 1208.1, which deals with statements about prior injuries that are false and that are not made for the purpose of obtaining benefits. The legislature has seen fit to clearly impose a requirement under Section 1208.1 that the false statement concerning a prior injury which is not made specifically to defraud the workers' compensation system, i.e. not for the purpose of obtaining benefits, will only result in forfeiture of benefits when the false statement "directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund." Thus, it appears the legislature has decided that where the false statements are not made specifically to obtain benefits, and thus not to defraud the workers' compensation system, the penalty of forfeiture of such benefits will only be imposed where the employer is prejudiced, i.e. where the false statement "directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund." However, where the false statements are made specifically to obtain benefits, and thus to defraud the workers' compensation system, the benefits will be forfeited for the sole reason that the claimant has willfully and deliberately attempted to defraud the workers' compensation system, and no further requirements are to be imposed.
Storks admits that, as written, Section 1208 imposes no prejudice requirement. However, Storks argues that, if read as written, the statute is too broad because it will result in the forfeiture of benefits for any false statement that is made, regardless of how inconsequential. This argument fails to recognize that the statute does not require the forfeiture of benefits for any false statement, but rather only false statements that are willfully made for the purpose of obtaining benefits. It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.
We hold that Section 1208 does not require that the employer be prejudiced by the claimant's false statements. We therefore *17 reject Storks' arguments and affirm the court of appeal judgment.

CONCLUSION
For the foregoing reasons, we reverse the court of appeal judgment in Resweber v. Haroil Construction Co., 94-297 (La.App. 3d Cir. 10/5/94), 644 So.2d 423, and reinstate the judgment of the hearing officer, and we affirm the court of appeal judgment in Storks v. Manpower Temporary Servs., 94-142 (La. App. 5th Cir. 11/29/94), 646 So.2d 1191.
JOHNSON, J., not on panel. Rule IV, Part 2, § 3.
NOTES
[*] Judge Henry L. Yelverton, Court of Appeal, Third Circuit, sitting by assignment in place of Justice James L. Dennis.
[1] Sections 1208 and 1208.1 determine the effect of a false statement or misrepresentation on a workers' compensation claim. The triggering mechanism which makes these provisions applicable is the making of a false statement or misrepresentation, not the occurrence of an accident or injury. Accordingly, it is the date the false statement or misrepresentation was made that is determinative in deciding which version of these provisions apply. Because we are not dealing with provisions setting forth which injuries are compensable under the workers' compensation scheme or what constitutes an "accident" under the workers' compensation scheme, the general rule that the governing law in a compensation action is that which was in effect at the time of the alleged injury, enunciated in such cases as Bruno v. Harbert Int'l, Inc., 593 So.2d 357 (La. 1992); Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991); and Smith v. Exxon Chem. Americas, 619 So.2d 140 (La.App. 1st Cir.1993), is not applicable to the present case.

At the time of Resweber's alleged false statement to Louisiana Insurers' investigator on August 21, 1992, Article 3, § 19 of the Louisiana Constitution provided: "All laws shall take effect on the sixtieth day after final adjournment of the session in which they were enacted, and shall be published prior thereto in the official journal of the state as provided by law. However, any bill may specify an earlier or later effective date." Act No. 763 of 1992, amending La.R.S. 23:1208, did not specify an effective date. The Regular Session of the Legislature of Louisiana for the year 1992 adjourned June 22, 1992, thus making August 21, 1992 the effective date of Act 763. Therefore, Act 763 of 1992 applies to the statements made by Resweber on August 21, 1992. Act 763 also applies to the statements made by Resweber to Dr. Franklin on June 8, 1993.
[2] The same version of Sections 1208 and 1208.1 which are applicable to Resweber's alleged false statements, supra, are applicable to Storks' alleged false statements.
[3] While Storks allegedly made a false statement concerning a prior injury on his employment application which contained the notice required by Section 1208.1, the hearing officer's holding was based on Section 1208.
[4] Subsequent to the alleged misrepresentations in the present cases, the legislature again amended Section 1208 to provide more severe criminal penalties ranging from six months imprisonment where the value of benefits is less than two thousand dollars, and up to ten years, where the value equals or exceeds ten thousand dollars. The amendment also increased the civil penalties to not less than five hundred dollars nor more than five thousand dollars. 1993 La. Acts No. 829.
[5] This provision was probably deemed necessary due to La.R.S. 23:1361, which prohibits the refusal to employ any applicant who has previously asserted a claim for workers' compensation benefits.
[6] This interpretation is in accord with the majority of the lower courts that have addressed the interpretation of Sections 1208 and 1208.1 vis-a-vis each other. Kampen v. Conway Southwest Express, 95-45 (La.App. 5th Cir. 4/12/95), 655 So.2d 380; Williams, 93-557 at p. 3, 640 So.2d at 385 (recognizing that Section 1208.1 imposes forfeiture of benefits for "past artifice", while Section 1208 "pertains to more contemporaneous deceit").
[7] We note that Storks allegedly made false statements on his employment application with Manpower, and that the application contained the notice required by Section 1208.1. However, the hearing officer did not base Storks' disqualification for benefits on Section 1208.1, nor these statements, but rather on Section 1208 and the statements made subsequent to his claim.