| MURRAY, Judge.
Andrew J. Prest appeals a judgment forfeiting his right to future workers’ compensation benefits under La. R.S. 23:1208 E based upon a finding that he had made material misrepresentations in connection with his claim. His employer, Empire Machine Works, Inc., and its insurer, Louisiana Construction and Industry Self-Insurers Fund (collectively, “Empire”), have answered the appeal, asking that the judgment be amended to require restitution of all benefits previously paid. We affirm.
FACTS AND PROCEEDINGS BELOW
It is undisputed that Mr. Prest injured his back in March 1995 while in the course and scope of his employment for Empire, necessitating two surgeries by the end of that year. Empire paid the resultant medical expenses as well as weekly benefits until Mr. Prest could return to light-duty work in November 1995. He continued to work for Empire Machine as Parts Manager until June 18, 1997, when new owners assumed control of the business and terminated his employment. Shortly thereafter, Mr. Prest’s temporary total disability (TTD) benefits were | ^reinstated. Although his treating physician recommended another operation on Mr. Prest’s back, Empire contested the necessity for, and extent of, any additional surgery.
On September 11, 1997, Mr. Prest was deposed by Empire’s attorney. After he *1019 was questioned concerning his education, work experience, and medical condition, Mr. Prest was asked about the circumstances surrounding his discharge by Empire’s new owners and whether he had received any money from them. He was then questioned as follows:
Q: Have you ever applied for unemployment?
A: No, sir.
Q: Have you earned any income or made any money from any other source whatsoever since you were laid off from Empire?
A: No, sir.[1]
Q: At any time while working for Empire, did you have any other sources of income, any side work or anything like that, that you could get a little extra money from?
A: I did some commercial fishing, shrimping.
Q: Were you doing any commercial fishing or shrimping in the four weeks before your accident?
A: Before my original accident?
Q: Yes, sir.
A: I don’t know exactly at that time, but I was doing commercial fishing. Probably not right at that time, because it didn’t start until May.
Q: And your injury was?
A: March.
Q: March. Have you done any commercial fishing or shrimping since your on-the-job accident?
J¿A: No.[2]
Mr. Prest then explained that he was the sole owner of the boat he used and that he had no plans to sell it. The questioning continued:
Q: Has anyone else used your boat since the accident?
A: No.
And you haven’t used your boat since the accident, either for commercial fishing or just pleasure? Q:
A: I have been out on it occasional times.
Q: And what do you do when you go out on it on occasional times?
A: I have brought part of my family fishing.
Q: And how are you able to do that in light of your pain in your back?
A: Most of the time when I go, I lay down on the motor box. I don’t really do the fishing myself; I let them do the fishing.
Q: How many times since the accident have you gone out on the boat?
A: Since ’95?
Q: Yes, sir. If you can approximate.
A: Ten times.
Q: How many times have you gone out in the boat in the last six months?
A: Three, four.
Q: And how many times have you gone out in the boat in the last month?
A: Maybe once.
Mr. Prest described that one fishing trip as including two friends who caught “maybe ten red snapper” in five hours. He denied that the fish had been sold or that he had ^participated in either catching the fish or unloading the boat.
During discovery in the ensuing months, it was revealed that Empire had obtained numerous receipts from fish sales by Mr. Prest since June 28, 1997. These receipts show that Mr. Prest had made eleven separate sales in July, nine in August, and eight in September 1997, including five in the days preceding his deposition. The amount paid at any one time ranged from $89.90 for sixty-eight pounds of fish on July 10th to $829.00 for five hundred forty-two pounds on July 21st; the monthly *1020 totals were over $6,400.00 in July, $5,200.00 in August, and $2,300.00 in September. Mr. Prest’s tax returns for 1996 and 1997 showed gross income from commercial fishing of $14,589.00 and $15,-661.00, respectively. While a net profit of $5,483.00 was reported for 1996, the return for 1997 indicated Mr. Prest had a net loss of $273.00 from commercial fishing.
Trial was held in September 1998 to determine if, as Empire contended, Mr. Prest had forfeited his right to workers compensation because of intentional material misrepresentations concerning his income, and if not, whether he was entitled to continued TTD benefits or merely supplemental earnings benefits (SEBs). The parties stipulated that Mr. Prest’s deposition, tax returns, and medical records were admitted into evidence, as well as .some discovery responses and the receipts discussed above. It was further stipulated that Mr. Prest’s medical records established the need for additional back surgery, and Empire had no evidence to the contrary.
Mr. Prest testified that the federal reef permit under which he fished near offshore rigs had been acquired by his father, one of the limited number issued in the early 1990’s. He stated that these licenses now sell for about $5,000.00, and are lost if unused for a period of time. Mr. Prest had used the federal permit, given to him by his father, to fish commercially for several years each May through September, but never made a living at it. Since his accident he has only been able to take his family | sand some friends out fishing. Under the federal permit, their catch had to be sold under Mr. Prest’s name, after which the money would be divided among those who had caught the fish, with a portion to him to cover his expenses.
On cross examination, Mr. Prest emphasized that his back injury prevented him from doing any of the physical tasks involved in fishing, such as loading ice, “trolling” for bait, fighting a fish into the boat, or unloading the catch. He admitted, however, that he was on his boat for each fishing trip represented by the receipts presented as evidence, and that he signed each invoice as seller of the fish. Mr. Prest explained that the deductions from income shown on his tax returns as “casual labor,” $1,750.00 in 1996 and $7,560.00 in 1997, was the amount paid to those who had accompanied him on each trip. However, because the tax laws did not require him to report such payments under $600.00, he did not have complete records on these expenses. Mr. Prest acknowledged that the only 1997 “casual labor” payments that exceeded $600.00 were to two of his stepsons, totaling $1,680.00 and $1,499.00 each.
Mr. Prest admitted on cross that his answers at his deposition concerning the frequency of his fishing trips was inaccurate. On redirect, however, he explained that he had been testifying from memory and was only trying to estimate how often he had taken his boat out in the preceding months. The parties then stipulated that if Mrs. Prest were called to testify, she would corroborate her husband’s testimony concerning his medical condition and its effect on his lifestyle.
A private investigator testified on Empire’s behalf that he had surreptiously videotaped[3] Mr. Prest on September 8, 1997. The investigator stated that he had first observed Mr. Prest at the marina, loading ice into a large ice chest using metal | ^containers that were approximately two feet by one foot in size. The claimant then drove to a fish processing plant and, while in the bed of his pickup truck, bent over the ice chest, pulled out several fish of varying sizes, and tossed them into the *1021 processer’s bin. Mr. Prest then loaded more ice into his ice chest.[4]
After Robert Prest, the claimant’s brother and former owner of Empire Machine Works, testified briefly for the defense, Andrew Prest was re-called as the final witness on his own behalf. He denied some of the details of the investigator’s testimony, stating he had never caught a three-foot fish and that “it’s impossible for one person to load a big ice chest into my truck.” Mr. Prest admitted, however, that he “may have helped” occasionally in loading ice or unloading a fish or two, but he simply could not remember such occasions.
Upon consideration of this evidence, testimony and the parties’ post-trial briefs, the workers’ compensation judge held that Mr. Prest had “wilfully [sic] made false statements for the purpose of obtaining benefits or payments,” and accordingly ordered any future benefits be forfeited. In separate reasons for judgment, the court explained that Mr. Prest’s negative answers at his deposition regarding his participation in commercial fishing and his receipt of any income after he was laid off simply could not be reconciled with the evidence of twenty-five different fish sales in the preceding two months. Although Mr. Prest had attempted to excuse the discrepancies and claimed confusion, the judge expressly found his testimony unsatisfactory, stating that:
[T]he misrepresentation concerning the earnings was intentionally done to continue receiving worker’s compensation benefits. The claimant should have disclosed his earnings, which would not have prevented him from obtaining supplemental earnings benefits. The claimant has forfeited his benefits for the accident herein ...
^DISCUSSION
La. R.S. 23:1208 provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, ... to willfully make a false statement or representation.
* * H* * *
D.... [A]ny person violating the provisions of this Section ... may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
Under this statute, forfeiture shall be ordered if the employer or insurer proves “1) a false statement or representation, 2) which is willfully made, and 3) which is made for the purpose of obtaining workers’ compensation benefits.” Resweber v. Haroil Construction Co., 94-2708, p. 11 (La.9/5/95), 660 So.2d 7, 14. The factual determination that all three requirements are met will not be reversed if supported by the record. Id. at 13, 660 So.2d at 15.

Mr. Prest’s appeal

Mr. Prest first asserts that the evidence was insufficient to support the finding that he made any false statement at his deposition. Going line-by-line through his testimony, he points to his notes on the errata sheet, explaining that he had merely misunderstood the question concerning “any income or ... any money from any other source,” and clarifying that he had not physically fished since his accident. He argues that because “he was not asked if he went out on [his boat] daily or weekly or monthly,” his statement that he had used it “occasional times” since his acci *1022 dent cannot be considered anything but truthful. Mr. Prest further emphasizes that Empire presented no evidence that he had, in fact, personally engaged in any fishing since his 1 Raccident, even though it had been given the names and addresses of some of those who had accompanied him on the fishing trips. Finally, he notes that he never denied signing the fish sale receipts and even reported that income on his tax returns. Given this characterization of the evidence, Mr. Prest contends that his inability to recall “every detail” regarding either the frequency of his trips out on his boat or the disposition of the cash that changed hands when fish were caught and sold “should not have been interpreted to be false statements.”
Mr. Prest next argues that even if his deposition testimony appeared to be false, it cannot be considered either willful or for the purpose of obtaining benefits because it was undisputed that his on-the-job injury and resultant medical condition entitled him to such payments. He asserts that, like the claimant who had “misrepresented his past” in Carver v. U.S. Copy, Inc., 96-611, p. 2 (La.App. 5th Cir.3/25/97), 694 So.2d 423, 424, writ denied, 97-1507 (La.9/26/97), 701 So.2d 986, “he did not do so to obtain compensation benefits because he had undoubtedly sustained an acute back injury for which he was receiving benefits.... ” Mr. Prest further contends that because the statements at issue were not about his injury, on which his claim was based, but concerned only the extent of his fishing activities, any apparent misrepresentation was not material to his claim for benefits. He thus maintains that because Empire had already acknowledged his entitlement to compensation and coverage of his medical expenses, his statements, even if false, cannot be found to have been intended to gain benefits that he would not have received otherwise.
Upon review of the entire record, however, we cannot say the workers’ compensation judge was manifestly erroneous in finding that the requirements for forfeiture were established in this case. Although Mr. Prest emphasizes that his reference to “occasional” trips out on his boat was only a vague answer to a vague question rather than a falsehood, his argument ignores the vast discrepancy between 19the estimated number of trips in the preceding months — “Three, four” in the last six months, and “Maybe once” in the month before his deposition — and the proof that he had actually made twenty-five fishing trips between June 28 and September 11, 1997, the date he was deposed. The extent of this variance between his “estimates” and the reality proven at trial not only supports a finding that these statements were false, but also casts a suspicious light on his earlier negative answer concerning the receipt of “any income or ... any money” since his accident. This denial is not only directly contradicted by the receipts from his sales of fish, but by the fact that Mr. Prest reported gross earnings from commercial fishing on his 1997 tax return. Notwithstanding his claim that he misunderstood the question, his answer that he had not received “any money from any other source whatsoever” was undeniably untrue. Thus, the determination that Mr. Prest made false statements and representations during his deposition is fully supported by the evidence presented.
Similarly, the finding that Mr. Prest’s misrepresentations were willful is justified on the facts and circumstances established by this record. Even if he had initially believed Empire’s question concerned only income from another employer, the subsequent focus on his commercial fishing activities clarified the scope of inquiry. Because Mr. Prest had previously reported these earnings on his tax return for 1996, and claims to have been fishing commercially for several years, his explanation that he did not consider the money received from selling fish to be “income” suggests intentional deception. Furthermore, although he reported a net loss from fishing for 1997, this was primarily due to *1023 a significant increase in Mr. Prest’s “casual labor” expenses of $7,560.00, up from $1,750.00 in 1996, for which he had no documentation other than for the amounts paid to his stepsons. Notably, this return was filed after it had been made clear that Mr. Prest’s commercial fishing activities were at issue, and showed that, in fact, his gross sales for the 1997 May-jSeptember10 fishing season had been higher than in 1996. More importantly, the court below specifically rejected the claim that any discrepancies in Mr. Prest’s deposition testimony resulted from innocent mistakes or negligence. This was essentially a credibility determination based upon the observation of his demeanor at trial, and is firmly established as being singularly within the factfinder’s province. Based upon these considerations, we find no manifest error in the determination that Mr. Prest’s false statements and representations were willful and intentional.
Finally, we must also reject Mr. Prest’s arguments that his misrepresentations were neither material to his claim nor made for the purpose of obtaining benefits. Taken as a whole, his deposition testimony indicates that since his on-the-job accident, Mr. Prest had used his boat only for occasional recreational outings with family and friends, and that any fishing was done solely by his guests for pleasure, not profit. Although it was not proven that he had, in fact, physically participated in any fishing since his injury, it was established that he remained able to derive some income from this source, as he had in years past. As noted by the court below, Mr. Prest’s lack of candor about the continued use of his boat for commercial fishing prevented an accurate assessment of his actual earnings’ loss, and thus the type of benefits (TTD or SEBs) to which he was currently entitled. Therefore, even if he did not explicitly misrepresent his physical condition,[5] the false statements concerning his income were clearly material to his claim that he continued to be entitled to the workers’ compensation payments he was receiving. See Tuminello v. Girling Health Care, Inc., 98-977, p. 4 (La.App. 5th Cir.1/26/99), 731 So.2d 316, 317-18. Expressed in the language of the statute, Mr. Prest made false statements “for the purpose of obtaining” temporary total disability benefits that he feared would be lost|nif his other income, possibly generated by his physical labor, were revealed.
Furthermore, we find nothing in Carver, supra, to suggest that forfeiture un: der R.S. 23.T208 can be ordered only for a false statement in connection with an initial compensation claim, rather than when continuing entitlement is at issue, as implied in Mr. Prest’s argument. In Carver, the claimant had denied having made any prior compensation claims and had told a doctor he had not been arrested. However, because it was shown at trial that he had been paid two weeks’ benefits for a low back pull three years earlier, and had once been arrested for possession of marijuana, the workers’ compensation judge ruled that these “false statements” disqualified him for benefits. The Fifth Circuit reversed, holding that neither the prior muscle sprain, and the attendant temporary benefits paid, nor the fact of an earlier arrest was material to the claimant’s current entitlement to benefits. The court thus held that the statements could not be considered made “for the purpose of obtaining benefits,” and the third requirement for forfeiture under R.S. 23:1208 was not met.
The facts of the instant case are clearly distinguishable from those in Carver. While receiving payments for a temporary total disability, Mr. Prest falsely stated that he had no other earned income. Unlike a prior arrest or minor injury, both the amount of income as well as the ability to earn that income may affect the type *1024 and amount of compensation benefits payable. Accordingly, we find no manifest error in the decision that Mr. Prest’s false statements were material to his claim and were made for the purpose of obtaining benefits.
As summarized here, the evidence presented supports the determination that Mr. Prest willfully made false statements and representations for the purpose of obtaining continued benefits. Accordingly, there is no error in the judgment ordering his future benefits forfeited under R.S. 23:1208 E.
| ü>Empire’s answer to the appeal
Empire argues that the workers’ compensation judge erred in excluding the investigator’s videotape and testimony about the tape, and assigns several other eviden-tiary errors for consideration in our review of the judgment below. However, because we are affirming the order of forfeiture under R.S. 23:1208 E, we need not address these issues.
Empire also assigns error in the judge’s failure to order restitution under R.S. 23:1208 D, arguing that such action is justified in this case by Mr. Prest’s “blatantly false and wilful [sic] misrepresentations ... both in his deposition and at trial.... ” However, this plea for relief was not presented in any of Empire’s pretrial submissions or in Empire’s post-trial brief to the court below, nor was any evidence or argument addressing the issue offered at trial. Accordingly, we cannot find that the failure to order restitution of workers’ compensation benefits previously paid was erroneous.
CONCLUSION
For the reasons assigned, the judgment below is affirmed.
AFFIRMED.

. On an undated deposition errata sheet, Mr. Prest explained: "I understood him to be asking me if I had another job at another company.”

. On the errata sheet, Mr. Prest explained: "I personally did not fish.”

. The videotape was ruled inadmissible because in pre-trial correspondence to plaintiff's counsel concerning stipulations, Empire’s attorney had advised "that we do not have any witnesses, photographs, video tapes and/or other evidence which supports any claim that your client actually fished at any time after [his] accident.”

. The remainder of the investigator’s testimony was proffered, in the judge’s absence, as he described what appeared on the inadmissible videotapes.

. The apparent attempt to conceal this "sideline" could give rise to the inference that, perhaps, Mr. Prest's physical condition did not limit his activities to the extent he claimed.