STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-1028

BETTY REEDER

VERSUS

HARDTNER MEDICAL CENTER

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 1-E
PARISH OF OUACHITA, NO. 13-02318
BRENZA I. JONES, WORKERS' COMPENSATION JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and Kent D. Savoie, Judges.

**AFFIRMED.**

**Paul H. Benoist**
**Benoist Law Offices**
**329 Market Street**
**Natchez, Mississippi 39120**
**(601) 445-4148**
**Counsel for Plaintiff/Appellant:**
      **Betty Reeder**

**Walter S. Salley**
**J. Martin Lattier**
**Lunn, Irion, Salley, Carlisle & Gardner**
**Post Office Box 1534**
**Shreveport, Louisiana 71165-1534**
**(318) 222-0665**
**Counsel for Defendants/Appellees:**
      **Hardtner Medical Center**
      **HSLI**

**KEATY, Judge.**

In this workers' compensation case, the employee appeals a judgment rendered by the workers' compensation judge (WCJ) finding that she forfeited her right to receive workers' compensation benefits by deliberately making false statements in order to obtain such benefits. For the following reasons, we affirm the WCJ's decision.

## FACTS AND PROCEDURAL HISTORY

On January 12, 2013, while in the course and scope of her employment as a Certified Nursing Assistant (CNA) employed by Hardtner Medical Center (Hardtner), Betty Reeder (Reeder) injured herself when she tripped and fell on a wheelchair. Indemnity and medical benefits were paid by the Louisiana Hospital Association Workers' Compensation Interlocal Risk Management Agency through its agent, HSLI, from January 15, 2013 through August 8, 2014, at a weekly rate of $308.30, based upon an average weekly wage of $462.45. The total temporary disability benefits paid to Reeder equate to $23,959.36. HSLI also paid Reeder's medical bills pursuant to the Louisiana Workers' Compensation Act's (LWCA's) reimbursement rate for dates of medical services rendered from January 16, 2013 through August 5, 2014. La.R.S. 23:1020.1-1415. The total medical benefits paid by HSLI equate to $64,780.05. HSLI subsequently terminated Reeder's indemnity and medical benefits on August 8, 2014, alleging that she made misrepresentations concerning benefit payments in violation of La.R.S. 23:1208.

The matter proceeded to trial on December 2, 2016, wherein Hardtner moved for a directed verdict following completion of the presentation of the evidence by Reeder. The WCJ took Hardtner's motion under advisement, and Reeder thereafter put on four rebuttal witnesses. Following trial, Reeder filed a

memorandum in opposition to the oral motion for directed verdict as being improper in a non-jury context. Hardtner responded by filing a written motion for involuntary dismissal. The WCJ issued its oral reasons for judgment and written judgment on January 17, 2017, and March 13, 2017, respectively, and found that Reeder forfeited her right to receive workers' compensation benefits by violating La.R.S. 23:1208. As a result, the WCJ denied Reeder's request for workers' compensation benefits and dismissed the matter with prejudice. From that decision, Reeder appeals.

On appeal, Reeder asserts the following assignments of error:

1. The trial court committed manifest legal error by granting an involuntary dismissal pursuant to La. Code Civ. P. art. 1672.B without evaluating all evidence presented by Claimant to determine whether Claimant proved her case by a preponderance of the evidence, or failed to carry her burden of proof.

2. The trial court committed manifest error of fact by finding that Claimant met each of the requirements of *Resweber v. Haroil Constr. Co.*, 94-2708 (La. 9/5/95), 660 So.2d 7. There is no evidence of willfulness in Claimant's statements by which she seeks to obtain workers' compensation benefits. The leap made by Hardtner and the trial court is unsupported if all of the evidence is considered, and even if incorrect statements were made by Claimant, they are unrelated to the work injury sustained on January 12, 2013 and are inconsequential.

**STANDARD OF REVIEW**

The standard of review applicable in workers' compensation cases was discussed by this court in *Foster v. Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784 (citations omitted), as follows: "Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the

2

factfinder's conclusion was a reasonable one."  "The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981).  Thus, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61.  "Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Vidrine v. La-Tex Rubber & Specialties, Inc.*, 07-157, p. 4 (La.App. 3 Cir. 5/30/07), 958 So.2d 146, 149.

## DISCUSSION

### I.     First Assignment of Error

In her first assignment of error, Reeder contends the WCJ committed manifest legal error by granting an involuntary dismissal pursuant to La.Code Civ.P. art. 1672(B) without evaluating all of the evidence presented by her to determine whether she proved her case by a preponderance of the evidence or failed to carry her burden of proof.

An involuntary dismissal under La.Code Civ.P. art. 1672(B) provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief.  The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

"Provided that the plaintiff has completed the presentation of his case, an involuntary dismissal may be granted in a workers' compensation case." *Dick v. B*

*& B Cut Stone Co., L.L.C.*, 40,441, p. 5 (La.App. 2 Cir. 12/14/05), 917 So.2d 1191, 1194.

In this case, the transcript reveals that Reeder's counsel offered into evidence multiple exhibits which the WCJ admitted. The transcript further reveals that after Reeder's counsel completed the presentation of the case, the following colloquy occurred:

THE COURT: Call your next witness, Mr. Benoist.

MR. BENOIST: That's it. We rest.

THE COURT: Claimant rest[s]. Call your first witness, Mr. Salley.

Thereafter, Hardtner's counsel responded: "At this point in time I would like to request a directed verdict. Her testimony is certainly fraud."[1] As noted above, the WCJ took Hardtner's motion for directed verdict under advisement, and Reeder put on rebuttal witnesses. After trial and the filing of post-trial motions and briefs, the WCJ denied Reeder's claim for benefits and dismissed the matter with prejudice based upon its finding that she violated La.R.S. 23:1208, which provides, in pertinent part:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

B. It shall be unlawful for any person, whether present or absent, directly or indirectly, to aid and abet an employer or claimant, or directly or indirectly, counsel an employer or claimant to willfully make a false statement or representation.

. . . .

---

[1] Hardtner's motion for directed verdict is mislabeled. A directed verdict can only be had in jury trials pursuant to La.Code Civ.P. art. 1810. This case was not a jury trial, but instead a bench trial. Hence, Hardtner's motion for directed verdict should have been a motion for involuntary dismissal pursuant to La.Code Civ.P. art. 1672(B).

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

As shown in subsection two below, all of the elements required to prove a violation of La.R.S. 23:1208 were satisfied following Reeder's presentation of evidence at trial. Accordingly, we find that the WCJ did not manifestly err in granting Hardtner's involuntary dismissal. This assignment of error is without merit.

## II. Second Assignment of Error

In her second assignment of error, Reeder contends the WCJ committed manifest error of fact by finding that she met each of the requirements of *Resweber v. Haroil Construction Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7. Reeder opines that there lacks evidence of willfulness in her statements by which she seeks to obtain workers' compensation benefits. Reeder argues that the leap made by Hardtner and the WCJ is unsupported if all of the evidence is considered. Reeder notes that even if she made incorrect statements, such statements are inconsequential because they are unrelated to the work injury at issue.

The Louisiana Supreme Court in *Resweber*, 660 So.2d at 16, addressed the proof required to prove fraud under La.R.S. 23:1208:

> By its plain words, Section 1208 requires only that 1) the claimant make a false statement or representation, 2) the statement or representation be willfully made, and 3) the statement or representation be made for the purpose of obtaining workers' compensation benefits.
>
> The legislature has made a policy decision that willful and deliberate false statements made specifically for the purpose of obtaining workers' compensation benefits is an attempt to defraud the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over recent years to make Section 1208 easier to enforce and to make its penalties stronger.

The *Resweber* court noted that the false representations must be made for the purpose of obtaining benefits and must be more than inadvertent or inconsequential statements, by stating:

> It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.

*Id*. The statute imposes no requirement that the employer show prejudice. *Id.*

A decision to impose or deny forfeiture under La.R.S. 23:1208 is a factual finding which will not be disturbed on appeal absent manifest error. *Brooks v. Madison Parish Serv. Dist. Hosp*., 41,957 (La.App. 2 Cir. 3/7/07), 954 So.2d 207, *writ denied*, 07-720 (La. 5/18/07), 957 So.2d 155. To reverse a fact finder's determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the trial court's finding and (2) the court must determine that the record establishes that the finding is clearly wrong or manifestly erroneous. *Stobart v. State, Dep't of Transp. and Dev*., 617 So.2d 880 (La.1993). Ultimately, the issue to be resolved by the reviewing court is not whether the fact finder was right or wrong, but whether its conclusion was reasonable. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

In finding that Reeder committed fraud in this case, the WCJ stated the following in its reasons for judgment:

This Court is unable to find the statements made by claimant during her deposition testimony to be inconsequential. The false statements are simply too numerous. They deal directly with the exact physical complaints claimant seeks to contribute to her injury. This Court also notes claimant was a certified nursing assistant. Thus, she is aware or should have been aware of the meaning of medical terminology such as symptoms and pre-existing conditions when she was questioned concerning her medical history. This court cannot believe claimant was able to forget a medical history extending beyond a decade and full of similar complaints during those periods.

The extensive list of pre-existing conditions reflective in the medical records and the far reaching statements reflecting a denial of pre-existing conditions to claimant's healthcare providers leads this Court with no other alternative but to find that claimant has indeed committed fraud.

At this juncture, we must review the medical records, deposition testimony, and testimony presented at trial and submitted into evidence to determine whether the WCJ's ruling was manifestly erroneous. In that regard, Reeder's Disputed Claim for Compensation (LWCA Form 1008) along with her testimony indicate that she sustained the following injuries following her workplace accident: headaches, neck pain, back pain, and leg pain. Reeder testified that the only pre-existing conditions that she suffered from were depression, hypertension, short-leg syndrome, and migraine headaches. However, the medical records, deposition testimony, and trial testimony in the record reveal Reeder failed to mention multiple pre-existing conditions that she suffered from prior to the accident and which are the same conditions that she claims resulted from the accident at issue.

Specifically, medical records from Reeder's family physician, Dr. Joan Brunson, dated October 15, 2008, advise that Reeder was involved in a motor vehicle accident on July 28, 2008, and was experiencing chest wall pain. Dr. Brunson treated Reeder for right neck and arm pain on December 18, 2006; right shoulder pain and leg pain on October 20, 2009; left sided neck pain on August 4,

7

2011; mid back pain on September 14, 2011; arm pain, left shoulder pain, and low back pain on January 26, 2012; and low back pain and arm pain on March 30, 2012, and June 29, 2012. Medical records from LaSalle General Hospital dated October 2, 2009, reveal that Reeder underwent an x-ray of her right shoulder wherein no significant abnormalities were noted. A medical record dated August 16, 2010, from LaSalle General indicates that Reeder presented for headaches and noted a history of right shoulder pain. A LaSalle General medical record dated August 11, 2011, indicates that right shoulder pain was listed under Reeder's medical history. Reeder's own trial testimony further reveals that she presented to LaSalle General on November 26, 2004, with complaints of low back pain.

Medical records from Reeder's cardiologist, Dr. Naseem Jaffraini, indicate that she presented to him on August 30, 2010, with joint pain, stiffness, and leg pain which worsened when she walked. Reeder again presented to Dr. Jaffraini on September 27, 2010, with chest discomfort, radiating neck pain, leg pain, and joint stiffness in her knees and feet. Dr. Jaffraini's medical record dated June 3, 2011, indicate chest pain, leg pain, neck pain, joint pain, and back pain. On September 23, 2011, Dr. Jaffraini noted complaints of chest pain, leg pain, joint pain, and back pain. According to Dr. Jaffraini's medical record dated June 3, 2012, Reeder also complained of muscle pain and loss of balance.

Reeder also presented numerous times from June 3, 2002 through December 29, 2011, to her chiropractor, Dr. Charles Clauss. During Reeder's June 3, 2002 appointment, she filled out a cervical examination form wherein she complained of constant head and neck pain and placed a check mark next to the phrase "low back pain." Dr. Clauss, according to his medical records, performed adjustments to Reeder's cervical spine and thoracic spine on June 4, 2002. Reeder

8

again presented to Dr. Clauss on March 24, 2003, for head and neck pain and adjustments were performed on her cervical and thoracic spine. Dr. Clauss's medical records show that he rendered treatment numerous times throughout 2003, 2004, and 2006. A medical record dated June 1, 2007, reveals treatment rendered following Reeder's complaint that she fell on her right shoulder. Dr. Clauss's medical records reveal that Reeder filled out an accident questionnaire on August 1, 2008. According to the questionnaire, Reeder was involved in a motor vehicle accident on July 28, 2008, sustaining a sore and tight neck between the scapulas along with rib and chest pain. The questionnaire indicates that following the automobile accident, Reeder went home and then proceeded to a doctor's clinic where she received pain medicine and underwent x-rays. Dr. Clauss's medical records contain a lumbar examination form dated August 1, 2008, which reveals an onset of lower back pain beginning on July 28, 2008, following an accident. The form notes that Reeder was also suffering from low back and buttocks pain. Similarly, a cervical examination form dated August 1, 2008, reveals that Reeder was involved in an accident on July 28, 2008. The form notes that Reeder complained of neck pain, left arm pain, and hand pain. The form reveals that Reeder suffered from low back pain along with pain in the following areas: head, neck, left shoulder, arm, hand, fingers, and between scapulas. Numbness was noted in her arm, forearm, and fingers.

Testimony from Dr. Clauss's deposition taken on April 12, 2016, confirms his treatment of Reeder for her neck pain and headaches in 2002, 2003, 2004, and 2006. During this period, Dr. Clauss testified that he made multiple adjustments to Reeder's cervical and thoracic spine. He noted that on June 1, 2007, he treated Reeder for neck pain after she had fallen on her right shoulder and adjusted her

lower cervical spine and upper thoracic spine, along with "range of motion stretching with the right shoulder." Dr. Clauss continued rendering treatment to Reeder in 2007 for neck tightness and headaches. He testified that on August 1, 2008, he performed a cervical examination after Reeder complained of neck pain that extended down between her shoulder blades, left arm, and hand. Dr. Clauss advised that the onset date of Reeder's pain was listed as July 28, 2008, on the cervical examination form and a check mark was placed next to the phrase lower back pain. Thereafter, Reeder was diagnosed with neck pain, mid back pain, and low back pain according to Dr. Clauss's testimony. He treated her multiple times for the remainder of 2008 for neck and back pain by performing adjustments and/or manipulations to her cervical, thoracic, and lumbar spine. Dr. Clauss testified that Reeder returned in 2010 and 2011 for neck and head pain.

The above medical evidence and testimony contradicts Reeder's deposition testimony of June 4, 2014, wherein she denied experiencing and seeking treatment for the following pre-existing conditions prior to the work accident at issue: back pain, neck pain, leg pain, and shoulder pain. The medical records and testimony in the record further contradict Reeder's deposition testimony that she could not recall receiving medical care following an automobile accident in July 2008, wherein she sustained a bruised chest. Specifically, medical records from LaSalle Family Medicine Clinic dated February 17, 2014, reveal that Reeder provided a history of pain in her legs, knees, and hands due to a motor vehicle accident years ago. Dr. Brunson's medical record dated October 15, 2008, indicates that Reeder was involved in a motor vehicle accident and experienced chest pain. Dr. Clauss's deposition testimony further indicates that he rendered treatment to Reeder after,

10

and arising from injuries sustained in, the motor vehicle accident. This is evident in Dr. Clauss's deposition testimony, as follows:

Q. [T]here's a motor vehicle accident that takes place and she's in here basically in the August period of 2008 and going forward and you're treating that, right?

. . . .

A. I don't remember if it was an auto -- a motor vehicle accident or a - - it was? Yeah, okay.

Interestingly, Reeder was present at Dr. Clauss's deposition and interjected the following: "Yeah, it was somewhere around July the 28th. I can remember that because it was right after my . . ." Dr. Clauss's deposition testimony and medical records also contradict Reeder's trial testimony that she only sought treatment from him prior to the work accident at issue for migraines and hip adjustments.

At trial during direct examination, Reeder also denied suffering from pre-existing symptoms relating to right leg pain, left leg pain, lower back pain, mid back pain, neck pain, left shoulder pain, and right shoulder pain. On cross-examination, however, Reeder's testimony changed from a denial of those pre-existing conditions to not remembering suffering from those pre-existing conditions. She concluded her trial testimony by admitting to suffering from many of the pre-existing conditions that she denied suffering from on direct examination at trial.

Having reviewed the record before us, we can find no manifest error in the WCJ's findings of fact. The evidence in the record supports its conclusion that Reeder willfully made numerous false statements and representations for the purpose of obtaining workers' compensation benefits. These false statements

11

alone are sufficient to uphold the WCJ's ruling.  Accordingly, this assignment of error is without merit.

## DECREE

For the foregoing reasons, the decision of the workers' compensation judge is hereby affirmed.  All costs of this appeal are assessed against Betty Reeder.

**AFFIRMED.**