806 So.2d 842 (2001)
J.E. MERIT CONSTRUCTORS, INC.
v.
Eric J. SMITH.
No. 2000 CA 2324.
Court of Appeal of Louisiana, First Circuit.
December 28, 2001.
Rehearing Denied February 21, 2002.
*843 Kirk L. Landry, Baton Rouge, LA, for plaintiff-appellee, J.E. Merit Constructors, Inc.
Michael L. Hebert, Baton Rouge, LA, for defendant-appellant, Eric J. Smith.
Before: CARTER, C.J., PARRO, and CLAIBORNE,[1] JJ.
CLAIBORNE, J.
Eric J. Smith appeals a judgment by a workers' compensation judge (WCJ)[2] that he had forfeited his entitlement to workers' compensation benefits due to his violation of La.R.S. 23:1208. The employer, J.E. Merit Constructors, Inc. (J.E. Merit), has also appealed, seeking an assessment of civil remedies against Mr. Smith, including penalties and restitution.

FACTS AND PROCEDURAL HISTORY
J.E. Merit had a contract to perform certain work at the Novartis plant. As part of this job, J.E. Merit hired Mr. Smith as a special duty worker. Mr. Smith's duties included working as a boilermaker, rigger, and pipe fitter at the plant. Specifically, his task was to remove an exchanger from the plant and replace it with a new one, which required that he wear a special suit with a hood. In this job, Mr. Smith worked twelve hours a day, seven days a week.
On July 12, 1998, Mr. Smith was working at the plant when he tripped and fell, injuring his knee. The foreman was present *844 at the time of the accident, but no action was taken to provide Mr. Smith with medical treatment at that time. In fact, Mr. Smith continued to work for some time until he took off the special suit he was wearing and noticed the swelling in his knee. He then reported the swelling to his foreman, who sent him to the medical trailer at the facility.
The medical staff examined Mr. Smith on the day of the accident but did not provide any treatment that day, because another worker was being treated for injuries that were believed to be more serious. Instead, the medical staff simply released Mr. Smith back to full duty work. Mr. Smith testified that he continued to be released for full duty work despite his daily complaints of pain. During this time, the medical staff treated the injury as a simple sprain with hot and cold packs, ibuprofen and creams.
After several days of this treatment, Mr. Smith's knee had not improved. Mr. Smith testified that in fact the pain had increased, his leg had become drawn up and bent, and he was required to lean on a stick to walk. Nevertheless, J.E. Merit continued to treat the injury as a sprain. Finally, Mr. Smith demanded that he be allowed to consult a doctor about his knee. J.E. Merit responded by sending him home and cutting his hours down from eighty-four to forty hours per week.
J.E. Merit did ultimately send Mr. Smith to see Dr. J. Thomas Kilroy, who diagnosed Mr. Smith with a ripped meniscus and a possible chipped bone in his knee. Dr. Kilroy performed surgery on Mr. Smith in August of 1998 to correct these problems.
When Mr. Smith returned to work after the surgery, he was placed in a light-duty position that had been created specifically for him because of his injury. J.E. Merit did not normally have a light-duty position, and such positions were only provided to workers' compensation claimants. Mr. Smith was advised that he was guaranteed forty hours of work per week in this position instead of the normal overtime hours he had previously been working. In addition, he continued to receive his normal hourly wage of $16.50 in this light-duty position. However, this position did not make any provision for the large decrease in the number of hours Mr. Smith had been working prior to the injury, either in terms of supplemental earnings benefits (SEB) or additional hours.
Initially, Mr. Smith was placed in a back room where he would simply sit at a desk during the day. He was subsequently required to stock and sweep the warehouse and wash trucks. Despite the assurances that he was guaranteed 40 hours per week, only one time during his tenure as a light-duty employee did Mr. Smith receive 40 hours of work and the corresponding pay. Mr. Smith repeatedly asked for the time and payment that he had been guaranteed, but J.E. Merit told him that certain paperwork would have to be completed to resolve the situation. No other response was given, and no other action was taken. In addition to not receiving the full 40 hours of work that he had been promised, Mr. Smith did not receive workers' compensation indemnity benefits or SEB during this time.
Mr. Smith attended physical therapy and doctor's appointments as he recovered from the injury and surgery. In addition to the traditional physical therapy treatment, he was required to undergo work hardening therapy.[3] This treatment consisted of extensive walking and climbing of *845 stairs and scaffolding instead of the simple stretching or flexing normally done in traditional physical therapy. Many of his physical therapy and work hardening sessions were scheduled to occur during work hours. When Mr. Smith attended those sessions during work hours, J.E. Merit would pay him his hourly wage for the time he attended. If he was not in therapy, Mr. Smith was expected to return to the plant to work in his light-duty capacity.
On October 26, 1998, Mr. Smith attended his first work hardening session from 8:00 a.m. to 11:15 a.m. Mr. Smith testified that after he had participated in this strenuous therapy, he was exhausted. Instead of returning to work after the appointment, he went home for the day. He did the same thing the next day after having been in work hardening therapy until 11:30 a.m. He later turned in to J.E. Merit two work excuse slips in which he falsely stated that he had in fact attended work hardening therapy until 4:30 p.m. on both days. Mr. Smith was paid his full wage for both afternoons that he claimed to be in treatment.
J.E. Merit subsequently discovered the false work excuses and confronted Mr. Smith, who acknowledged that he had not been in work hardening therapy for the full time stated on the forms. As a result, J.E. Merit suspended Mr. Smith for three days without pay and took back the wages paid for the two afternoons he had claimed to be in therapy. Mr. Smith continued to work for J.E. Merit in the light-duty position until November 17, 1998, when he was terminated as part of a reduction in force.
J.E. Merit paid all of Mr. Smith's medical expenses, but did not pay him any workers' compensation indemnity benefits. Based on the false statements made by Mr. Smith, J.E. Merit terminated all workers' compensation benefits and commenced these proceedings by filing a disputed claim for compensation alleging a violation of La.R.S. 23:1208. Mr. Smith filed an answer and reconventional demand seeking SEB and payment for additional medical treatment.
The WCJ determined that the submission of the falsified statements by Mr. Smith regarding the time he was attending physical therapy was fraud pursuant to La.R.S. 23:1208 resulting in the forfeiture of his workers' compensation benefits. Because of this determination, the WCJ never reached Mr. Smith's claims for SEB and additional medical treatment, and those claims were dismissed. Mr. Smith has appealed this decision, as has J.E. Merit, who seeks an award of civil penalties against Mr. Smith pursuant to La.R.S. 23:1208D.

ASSIGNMENTS OF ERROR
Mr. Smith has listed four assignments of error in his brief. The primary issue raised by Mr. Smith is whether the WCJ erred in finding that he forfeited his right to workers' compensation benefits pursuant to La.R.S. 23:1208. Mr. Smith further argues that he was entitled to SEB and additional medical treatment, as well as penalties and attorney's fees, from J.E. Merit as a result of his workers' compensation claim. Finally, Mr. Smith claims that he is entitled to additional attorney's fees for prosecuting this appeal. J.E. Merit has answered the appeal and alleges that the WCJ erred in not assessing civil penalties against Mr. Smith as provided by La.R.S. 23:1208.

DISCUSSION
An employee who suffers personal injury by accident arising out of and in the course of his employment is entitled to compensation from his employer. La.R.S. 23:1031. It is undisputed that Mr. Smith was injured while he was performing his *846 duties as a special duty employee. The injury was witnessed and properly documented, and Mr. Smith was required to undergo surgery and other medical treatment as a result of the injury. Therefore, Mr. Smith was entitled to compensation from J.E. Merit. The pivotal issue before this court is whether or not Mr. Smith forfeited this right to compensation by willfully making a false statement for the purpose of obtaining benefits.
La.R.S. 23:1208 provides, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits, and encompasses any false statements or misrepresentations made to anyone, including the employer, physicians, or insurers, when made willfully or deliberately for the purpose of obtaining benefits. It contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. Resweber v. Haroil Construction Company, 94-2708, 94-3138, pp. 1-2, (La.9/5/95), 660 So.2d 7, 9.
Therefore, in order to establish a claim that an employee has forfeited his benefits pursuant to section 1208, the following requirements must be met: (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber, 94-2708, 94-3138 at p. 7, 660 So.2d at 12. The issue of whether an employee forfeited his workers' compensation benefits by willfully making false statements in order to obtain benefits is one of fact, which is not to be reversed on appeal absent manifest error. See Short v. Gaylord Chemical Corporation, 98-0606, p. 10 (La.App. 1st Cir. 4/1/99), 731 So.2d 493, 499.
In this case, Mr. Smith acknowledged that he had made false statements regarding the number of hours he spent at work hardening therapy when confronted on the issue by representatives of J.E. Merit. He also acknowledged these false statements in his testimony during the hearing before the WCJ. Based on this testimony and other evidence in the record, the WCJ found that Mr. Smith had made those statements willfully and for the purpose of obtaining workers' compensation benefits. After a review of the record, we disagree with the WCJ's determination that Mr. Smith made these false statements for the purpose of obtaining workers' compensation benefits, and we hereby reverse.
Statutory forfeiture of workers' compensation benefits is a harsh remedy and as such must be strictly construed. Wise v. J.E. Merit Constructors, Inc., 97-684, p. 7 (La.1/21/98), 707 So.2d 1214, 1218. Moreover, workers' compensation law in general is to be construed liberally in favor of the employee. Faught v. Ryder/P*I*E Nationwide, Inc., 543 So.2d 918, 924 (La. App. 1st Cir.), writ denied, 545 So.2d 1040 (La.1989).
Section 1208 pertains to false statements made for the purpose of obtaining *847 or defeating any benefit or payment under the provisions of Chapter 10, Title 23 of the Louisiana Revised Statutes, dealing with workers' compensation. It is obvious, therefore, that the benefit or payment sought to be obtained or defeated through the false statement must be a workers' compensation benefit. Such benefits are due to an employee who suffers a work-related injury due to accident. La.R.S. 23:1031. There is no requirement that the employee work for, or otherwise earn, those benefits.
J.E. Merit has not seriously contested, at any stage of these proceedings, the fact that Mr. Smith was injured in the course and scope of his employment, nor has it contested Mr. Smith's underlying right to receive workers' compensation benefits apart from the fraud allegations. In fact, J.E. Merit paid Mr. Smith's medical expenses until the false statements were discovered.
Despite the fact that Mr. Smith was clearly entitled to workers' compensation indemnity benefits, J.E. Merit chose not to pay him any such benefits. Instead, J.E. Merit set up a light-duty position for Mr. Smith through which he could earn his regular hourly wage by working or attending medical appointments. When Mr. Smith was not present at work or obtaining medical treatment, he did not receive any compensation from J.E. Merit whatsoever.
Certain other testimony also indicates that these payments were not in fact workers' compensation benefits. At the hearing on this matter, J.E. Merit presented testimony from Frank Lee Moreau, Jr., a senior claims representative with ESIS, Inc. (ESIS), who had been handling J.E. Merit's workers' compensation claims for seven years.[4] Mr. Moreau testified that he administered Mr. Smith's workers' compensation claim, but he never paid any indemnity benefits to Mr. Smith as part of this claim. Furthermore, Mr. Moreau testified that he had explained to Mr. Smith that he might be entitled to receive indemnity benefits if he could no longer work or the light-duty position was no longer available. This testimony clearly indicates that the payments Mr. Smith received as a result of his light-duty work were not workers' compensation benefits, but were in fact wages.
Furthermore, Mr. Smith presented testimony indicating that J.E. Merit set up this light-duty position in an effort to avoid reporting a workers' compensation lost-time accident. Mr. Smith testified that J.E. Merit safety personnel advised him that companies avoid lost-time accidents, because if there are too many of them the company could lose its current contract. Mr. Smith further testified that J.E. Merit had already suffered some lost-time accidents on this job, and that additional ones could threaten the contract. J.E. Merit did not introduce any evidence to controvert this testimony. This is a further indication that J.E. Merit was requiring Mr. Smith to earn wages through this light-duty position, rather than simply paying him workers' compensation benefits due him as a result of his work-related injury.[5]
*848 Based on a thorough review of the testimony and evidence presented, we conclude that the WCJ erred in finding that Mr. Smith violated section 1208. Furthermore, Mr. Smith has already been penalized for his actions by J.E. Merit, who suspended him from work for three days without pay, and took back the wages he was paid for the two afternoons at issue in this matter. Mr. Smith's statements amounted to a misrepresentation made to obtain payments for unearned wages (and nothing in this opinion should be construed to condone the attempted deception), but they do not constitute a violation of section 1208. Therefore, the WCJ erred in finding that Mr. Smith had forfeited his right to workers' compensation benefits as a result of his false statements. We hereby remand this matter to the Workers' Compensation Administration for a determination of the benefits due Mr. Smith, including penalties and attorney's fees, if any. Because we have found that Mr. Smith did not violate section 1208 resulting in a forfeiture of his workers' compensation benefits, we do not need to address the issues raised in the appeal by J.E. Merit concerning restitution and civil penalties.

CONCLUSION
For the foregoing reasons, we reverse the decision of the workers' compensation judge determining that Eric J. Smith violated La.R.S. 23:1208 and forfeited all workers' compensation benefits. We further remand this matter to the workers' compensation administration for a determination of the amount of benefits due to Eric J. Smith, including penalties and attorney's fees, if any. The appeal of J.E. Merit Constructors, Inc. seeking restitution and civil penalties is hereby dismissed. All costs of this appeal are assessed to J.E. Merit Constructors, Inc.
REVERSED AND REMANDED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] La.R.S. 23:1310.5(F) requires that the published court of appeal opinion identify the office of workers' compensation district from which the appeal was taken and the name of the workers' compensation judge who rendered the judgment or award. The WCJ was Hon. Pamela Moses-Laramore of the Office of Workers' Compensation, District 5.
[3] In some instances the record refers to "work conditioning therapy" and in others to "work hardening therapy." The terms are apparently interchangeable.
[4] Although J.E. Merit Constructors, Inc. in its initial filing of the disputed claim listed ESIS, Inc. under the caption "INSURER," J.E. Merit and ESIS denied in their answer to reconventional demand that ESIS was a Louisiana insurance corporation. Mr. Moreau testified that he was the only claims adjuster in the state of Louisiana who has handled the files of Jacobs Engineering Group, including J.E. Merit, and that J.E. Merit was self-insured. We infer that ESIS, Inc. is a claims adjustment firm.
[5] Section 1208 applies to false statements made by any person, including an employer, for the purpose of obtaining or defeating any workers' compensation benefit or payment. The penalties for such violation are both civil and criminal. The employee would suffer the additional penalty of forfeiture of any compensation benefits. Conceivably, these monetary losses could equal or exceed the criminal and civil fines. Before us in the present case is only the issue of the employee's false statements and the intent thereof and no statements made by any one else. Strict construction demands a high burden of proof on the issue of the employee's intent or purpose in making the false statements.