720 So.2d 66 (1998)
Boyette VARNADO
v.
WINN-DIXIE LOUISIANA, INC.
No. 98 CA 0301.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
Diane K. Zink, Laplace, for Claimant/Appellant.
James M. Taylor, New Orleans, for Defendant/Appellee.
Before GONZALES, KUHN and WEIMER, JJ.
KUHN, Judge.
Claimant, Boyette Varnado, has appealed a ruling by the Office of Workers' Compensation *67 ("OWC") dismissing his claim on the basis that he was disqualified from receiving benefits because he willfully made false statements for the purpose of obtaining benefits. We affirm.

ISSUE
The issue presented is whether the OWC hearing officer was manifestly erroneous in determining that claimant, for the purpose of obtaining workers' compensation benefits, willfully made false statements or representations so as to have forfeited any right to those benefits under the provisions of La. R.S. 23:1208.[1]

PROCEDURAL BACKGROUND
Mr. Varnado began working as a warehouse selector for Winn-Dixie Louisiana, Inc. ("Winn-Dixie") during May of 1995. He filed a claim for workers' compensation benefits for injuries alleged to have occurred while working in the warehouse on July 10, 1995. Winn-Dixie denied the claim on the basis that Mr. Varnado's accident was "unwitnessed and not reported when it occurred." Winn-Dixie also maintained that Mr. Varnado had been "deliberately deceptive regarding prior accidents ... [and] the diagnoses from the prior accidents."
A hearing was held on April 15, 1996, during which Mr. Varnado and his wife testified regarding the alleged accident that occurred on July 10, 1995.[2] Winn-Dixie cross-examined Mr. Varnado and challenged his credibility based upon his failure to disclose numerous prior accidents and injuries to the Winn-Dixie personnel in an employment medical questionnaire and his misrepresentation of the type of injuries and symptoms he experienced after these prior accidents. Winn-Dixie also introduced into evidence extensive medical documentation regarding claimant's prior injuries.
At the close of claimant's case-in-chief, the defense moved for an involuntary dismissal. The hearing officer granted the motion, finding Mr. Varnado had not met his burden of proving a work-related accident and subsequent injury. On appeal, this court vacated the hearing officer's ruling finding it was chronologically impossible for the hearing officer to have reviewed the entirety of the voluminous evidence admitted at the hearing prior to rendering his determination at the close of claimant's case-in-chief. Varnado v. Winn-Dixie Louisiana, Inc., 96-1838 (La. App. 1st Cir.6/20/97) (unpublished). The matter was remanded to the OWC for further proceedings. On remand, the parties submitted the matter for decision without introducing additional evidence.
The following pertinent evidence was introduced during the April 15, 1996 hearing:
Mr. Varnado testified that he previously injured his mid and/or upper back in an onthe-job accident on May 31, 1985, while working at a Delchamps Distribution, Inc. ("Delchamps") warehouse. The accident occurred approximately three months after he began working for Delchamps. He explained that a stack of items fell on the top of his back. He was treated by orthopedic surgeons, Dr. Kenneth N. Adatto and Dr. Larry G. Ferachi, between May of 1985 and September of 1988.
Dr. Ferachi examined Mr. Varnado on July 1, 1985, at which time Mr. Varnado reported he had a "burning pain in the lower lumbar spine region." His examination also revealed tenderness in the lower lumbar spine region. Dr. Ferachi's clinical impression was that Mr. Varnado had sustained an acute lumbo-sacral strain. Dr. Ferachi admitted *68 Mr. Varnado to Westpark Hospital on July 15, 1985. Mr. Varnado's chief complaint at this time was back pains. The hospital admission report states, "the pain is located in the lower back with a burning type pain...." The report indicated the diagnostic impression was lumbosacral strain.
In a letter dated April 23, 1986, from Dr. Adatto to the insurance company handling the workers' compensation claim arising out of the May 1985 accident, Dr. Adatto reported he evaluated Mr. Varnado on April 15, 1986. Dr. Adatto stated that Mr. Varnado indicated he had been previously treated by Dr. Ferachi and other physicians of whose names he was unsure. In this letter, Dr. Adatto further stated that Mr. Varnado complained of moderate "low back pain" going into the legs on both sides. In a follow-up letter dated July 10, 1986, Dr. Adatto informed the insurance company that an MRI evaluation showed "some disc bulging present" and that the L5-S1 disc is starting to "dehydrate or desiccate." He described Mr. Varnado as the type of individual that should be trained in a capacity where he would not stoop, bend or lift objects weighing over 25-50 pounds. Following an August 28, 1986 evaluation, Dr. Adatto diagnosed lumbar syndrome.
In connection with Dr. Adatto's medical treatment on April 15, 1986, Mr. Varnado was asked to complete a pain evaluation sheet by indicating on a drawing where he felt the pain he described. The drawing shows a bold line drawn on the extreme lower portion of the back, far below the waistline. When Mr. Varnado was questioned about the drawing during the hearing, he stated the line was marking his waistline. Mr. Varnado also completed a history questionnaire on April 15, 1986, in which he answered, "Yes," to the question, "Do you have low back pain?" Dr. Adatto again examined Mr. Varnado on April 21, 1987. At this time, Dr. Adatto noted that Mr. Varnado "still complains of low back pain." Dr. Adatto diagnosed lumbar syndrome.
Mr. Varnado received workers' compensation benefits for nearly three years following this accident. After benefits were terminated, he filed a suit for additional compensation benefits.[3] The petition for benefits alleged that Mr. Varnado "injured his back on the L5-S1 levels," he "suffered a probable ruptured disc," and that as a result of the injury plaintiff continued to be "disabled in (his) lower back...." He settled his claim for additional benefits on December 12, 1988. The settlement documents, which were signed by Mr. Varnado, his attorney, and the attorneys representing the employer and insurer, set forth that Mr. Varnado had "sustained a permanent partial disability to his back (diagnosed as: herniated spinal intervertebral disks at levels L3-4, L4-5, L5-S1 and chronic pain) and body as a whole."
When Mr. Varnado was cross-examined during the hearing regarding the Delchamps accident, he testified that he had not injured his lower back, explaining the injury was not below the waistline. He further denied having reported lower back pain to the medical providers who treated him following this injury.
During March of 1989, Mr. Varnado began working for Circle K Corporation ("Circle K"). Less than four months later, he sustained another on-the-job back injury, while bending over to pick up cases of drinks and sacks of feed. He explained his injury following the Circle K accident was not "serious like it is now." When Mr. Varnado was specifically questioned on cross-examination about the location of his back pain following the Circle K accident, he pointed to an area of his back that he identified as his middle back.[4] Mr. Varnado testified that Dr. Adatto treated him for approximately five years after this accident. Mr. Varnado settled a claim for workers' compensation benefits for injuries arising from this accident during 1994.
Dr. Adatto's notes dated August 10, 1989, state, "Old patient of mine, new accident.... *69 It was a lifting type injury.... [B]y the history this is a reactivation of the old symptomatology which is similar to before but has now gotten worse." Dr. Adatto again diagnosed lumbar syndrome. On this date, Mr. Varnado filled out another history questionnaire, in which he answered, "Yes" to the question, "Do you have low back pain?"
The medical reports from Gideon Chiropractic Clinic establish that Mr. Varnado received chiropractic care following the 1989 accident, and that he reported symptoms of back pain and buttocks area pain. Dr. Robert A. Steiner, an orthopedic surgeon, conducted an independent medical evaluation of Mr. Varnado after the 1989 accident and set forth his findings in a November 13, 1989 letter to Circle K's insurer. The letter states, "At the time of this evaluation [Mr. Varnado] was complaining of periodic low back pain occurring maybe every other day." While exercising during a back therapy program, Mr. Varnado sustained an injury to his knee, which required surgery during December of 1990.
Dr. Adatto continued to treat Mr. Varnado for back pain. Diagnostic testing revealed disc pathology at the L5-S1 level. As of December of 1993, Dr. Adatto assessed that Mr. Varnado had a "lumbar disc he has learned to live with" and noted that Mr. Varnado had a "total permanent spinal disability."
With respect to the incident that occurred at Winn-Dixie, Mr. Varnado testified that he experienced pain in his back after lifting and stacking 16 boxes of bleach in the warehouse. He explained he hurt his back shortly before lunchtime and he reported the incident immediately after lunch.
On the day of the alleged accident, July 10, 1995, Mr. Varnado was examined by Dr. John A. Walker. Mr. Varnado reported that he was experiencing low back pain and that his pain began after lifting crates at work. Dr. Walker noted in his records that Mr. Varnado "denies any prior significant illness, other than knee surgery." Dr. Walker diagnosed lumbosacral strain.
Mr. Varnado returned for a follow-up visit for his back pain on July 13, 1995. He was seen by Dr. Michael A. Drapcho, a physician who practiced in the same clinic as Dr. Walker. Dr. Drapcho noted that Mr. Varnado reported "severe pain in his lower back at the tailbone...." Based on the results of a July 14, 1995 CT scan of the lumbar spine, which revealed mild protruded disc material at the L5-S1 level, Dr. Drapcho diagnosed a herniated disc.
On October 5, 1995, Dr. K.E. Vogel, a neurologic surgeon, evaluated Mr. Varnado's lumbosacral and right leg pain. In a October 6, 1995 letter to Dr. Walker, Dr. Vogel states, "[Mr. Varnado] relates being in good health until 7/10/95 when while moving cases onto wooden pallets he noted the onset of lumbosacral pain." Dr. Vogel also noted that "The patient denies all previous injuries except in 1985 he injured his back from which he completely recovered." Dr. Vogel's diagnostic impression was also a "herniated lumbar disc."
During the hearing when Mr. Varnado was asked whether he had experienced low back pain before the Winn-Dixie accident, he answered, "No." He explained that the earlier accidents had involved his mid-back and upper-back.[5]
Pursuant to a ruling dated October 2, 1997, the OWC dismissed Mr. Varnado's claim with prejudice. In written reasons for judgment, the hearing officer addressed Mr. Varnado's previous accidents and injuries, stating that Mr. Varnado had allegedly been injured in two previous work-related accidents and in previous automobile accidents.[6] The hearing *70 officer found that although Mr. Varnado claimed he suffered injury to his middle and upper back as a result of the previous workrelated accidents, the medical reports following these accidents established that his lower back had been treated. The hearing officer also noted that the medical evidence established that Mr. Varnado, upon first receiving treatment following the accident which allegedly occurred at Winn-Dixie, incorrectly informed his treating physician that he had not had any prior illnesses other than knee surgery.
The hearing officer also addressed claimant's responses on a Winn Dixie post-employment offer medical questionnaire. The questionnaire asked whether claimant was currently experiencing, or had ever experienced, various medical conditions listed on the form. The hearing officer acknowledged that claimant had written "no" in response to all of the conditions, including those which referred to physical conditions for which he had been treated following his previous work-related accidents which had also resulted in workers' compensation claims. The hearing officer also noted that Mr. Varnado had also answered "no" to the question, "Have you ever filed or do you intend to file a workers' compensation claim for previous job-related injury or illness?"
The hearing officer concluded it was obvious that Mr. Varnado had willfully made false statements for the purpose of obtaining workers' compensation benefits, resulting in his forfeiture of any right to benefits pursuant to La. R.S. 23:1208. The hearing officer further found that neither the testimony of Mr. Varnado nor his wife was creditable. Mr. Varnado has appealed urging that the hearing officer was manifestly erroneous in finding he willfully made false statements for the purpose of obtaining benefits.[7]

ANALYSIS
In Resweber v. Haroil Construction Company, 94-2708, 94-3138, pp. 1-2 (La.9/5/95); 660 So.2d 7, 9, the Supreme Court addressed the proper interpretation and application of La. R.S. 23:1208 and La. R.S. 23:1208.1[8], stating the following:
We hold that each of these anti-fraud provisions serves a specific purpose and applies to different situations. Louisiana Revised Statutes 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits and therefore generally becomes applicable at the time of an employee's accident or claim. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. It contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. The purpose of La. R.S. 23:1208.1, however, is to allow the employer to ask prospective or current employees about prior injuries. It applies to employment-related questioning of an employee or prospective employee, by an employer, concerning a prior injury, when there is no pending workers' compensation claim. The statute results in the forfeiture of a claimant's *71 workers' compensation benefits when that claimant made false statements concerning a prior injury in response to such an inquiry. For Section 1208.1 to be enforceable, written notice must be given to the employee that giving false statements may result in the forfeiture of workers' compensation benefits.
Because the two statutes serve separate purposes and apply to different situations, the requirements of each statute should not be imposed on the other, and more specifically, the notice requirement of La. R.S. 23:1208.1 should not be judicially engrafted into La.R.S. 23:1208. We further hold there need be no showing of prejudice on the part of the employer prior to the forfeiture of an employee's benefits under Section 1208.
The Supreme Court set forth that the only requirements for forfeiture of benefits under La. R.S. 23:1208 are that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Construction Company, 94-2708, 94-3138 at p. 7; 660 So.2d at 12; Sumrall v. Luhr Brothers, 95-0779, p. 5 (La.App. 1st Cir.12/15/95); 665 So.2d 796, 799, writ denied, 96-0187 (La.3/15/96); 669 So.2d 425.
In a workers' compensation case, as in other cases, we are bound by the manifest error rule and we may not set aside the factual findings of the hearing officer absent a finding by this court that they are clearly wrong or manifestly erroneous. Rivera v. West Jefferson Medical Center, 96-152, 96-153, p. 14 (La.App. 5 Cir. 7/30/96), 678 So.2d 602, 610. Based on the evidence offered at the hearing, we find no manifest error in the hearing officer's findings of fact and find no error in the hearing officer's conclusion that Mr. Varnado willfully made false statements and representations regarding his medical history for the purpose of obtaining compensation benefits.
The record substantiates that Mr. Varnado misrepresented his past physical condition to Dr. Walker on July 10, 1995, the day of the alleged Winn-Dixie accident; misrepresented his past physical condition to Dr. Vogel during his October 5, 1995 examination; and made false statements during his April 15, 1996 testimony. While he asserted during the hearing that he had not injured his lower back or reported symptoms of lower back pain prior to the alleged Winn-Dixie accident, the medical evidence establishes that he had sustained injury to his lower back, had reported lower back pain to his medical providers and had received treatment for his lower back symptomatology on several previous occasions.[9]
Based on the record as a whole, we find a reasonable factual basis exists to support the hearing officer's conclusions that Mr. Varnado made false statements, that such statements were made willfully, and were made for the purpose of obtaining compensation benefits. As such, we cannot say the hearing officer's dismissal of Mr. Varnado's claim based on a forfeiture of benefits under La. R.S. 23:1208 is erroneous.

CONCLUSION
For the above reasons, we affirm the Office of Workers' Compensation's ruling denying the claim of Boyette Varnado and dismissing his claim with prejudice. The costs of this appeal are to be paid by claimantappellant, Mr. Varnado.
AFFIRMED.
NOTES
[1] At the time of the alleged accident, La. R.S. 23:1208 provided:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * * * * *
E. Any employee violating this Section shall, upon determination by a hearing officer, forfeit any right to compensation benefits under this Chapter.
[2] Mr. Varnado also introduced records concerning the medical treatment he received as a result of the alleged injury he sustained.
[3] Suit was filed against Girl Friday Employment Services, Inc. ("Girl Friday"), the agency who employed Mr. Varnado to work for Delchamps, and Girl Friday's insurer.
[4] On direct examination, Mr. Varnado stated that the Circle K accident had resulted in injury to his upper back.
[5] Mr. Varnado also testified regarding three automobile accidents he had been involved in prior to the Winn-Dixie accident. He explained he injured his neck and upper back in an accident that occurred on July 3, 1991. He settled a claim arising out of this accident for $3,000.00. He reinjured his neck in an accident that occurred during April of 1993, and settled his claim for $1,500.00. He stated he injured his neck, upper shoulder and back in an accident on June 18, 1993. During the hearing, Mr. Varnado denied injury to his lower back resulting from this accident. However, records from Gideon Chiropractic Clinic indicated he reported complaints of lower lumbar pain on June 29, 1993.
[6] Although the hearing officer referred to two previous automobile accidents, the record establishes Mr. Varnado was involved in three automobile accidents between July of 1991 and June of 1993.
[7] We pretermit claimant's argument that the OWC tribunal committed manifest error in finding he failed to establish he injured his lower back in an on-the-job injury on July 10, 1995. Although the hearing officer stated that Mr. Varnado's testimony was not creditable, the hearing officer did not make an express finding as to whether an accident occurred on this date.
[8] La. R.S. 23:1208.1 provides:

Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1....
[9] The record also contains ample evidence demonstrating that Mr. Varnado gave untrue information to Winn-Dixie on the medical questionnaire prior to the incident in question. We recognize that because the Winn-Dixie post-employment offer medical questionnaire did not contain a notice advising Mr. Varnado that his failure to answer truthfully could result in the forfeiture of workers' compensation benefits, the forfeiture of Mr. Varnado's rights to benefits cannot be based on information he provided in response to the questionnaire. However, we address Mr. Varnado's untruthful responses to the inquiries in the questionnaire solely for the purposes of: 1) reviewing the determination that Mr. Varnado willfully made false representations to Dr. Walker and Dr. Vogel and willfully made false statements during his testimony, and 2) demonstrating why the hearing officer may have determined Mr. Varnado's testimony, as a whole, lacked credibility.