844 So.2d 355 (2003)
WESTERN SIZZLIN STEAKHOUSE
v.
Donna McDUFFIE.
No. 2002 CA 0935.
Court of Appeal of Louisiana, First Circuit.
March 28, 2003.
Writ Denied June 20, 2003.
*356 Karen Wiedemann, New Orleans, for Defendant/Appellant, Donna McDuffie.
Daniel Steven Wanko, Jr., John R. Rabalais, Covington, for Plaintiff/Appellee, Western Sizzlin Steakhouse.
Before: CARTER, C.J., WHIPPLE, J., and CIACCIO, JJ.[1]
WHIPPLE, J.
Claimant, Donna McDuffie, appeals from a grant of summary judgment, forfeiting her right to workers' compensation benefits under LSA-R.S. 23:1208, based upon a finding that she made material misrepresentations in connection with her claim, and ordering restitution to her employer, Western Sizzlin Steakhouse ("Western Sizzlin"), of all benefits previously paid. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Claimant was hired by Western Sizzlin in May of 2000 as a manager of their Bogalusa restaurant.[2] Claimant contended that on September 29, 2000, she sustained an injury to her lower back, right leg and hip, after allegedly falling off of a chair while restocking items in the restaurant's stock room. There were no witnesses to the accident. Claimant subsequently filed a claim with Western Sizzlin's insurer, Louisiana United Businesses, and began receiving workers' compensation benefits.
On May 3, 2001, Louisiana United Businesses filed a disputed claim for compensation with the Office of Workers' Compensation ("OWC") disputing that claimant "sustained a compensable accident and injury arising out of her employment" with Western Sizzlin on September 29, 2000. After the parties conducted discovery, Western Sizzlin filed a motion for summary judgment contending that claimant had forfeited all rights to benefits to which she would have otherwise been entitled pursuant to LSA-R.S. 23:1208.[3] In support of the motion, Western Sizzlin submitted claimant's medical records, deposition testimony, and interrogatories propounded to the claimant by Western Sizzlin. On January 10, 2002, the OWC granted Western Sizzlin's motion for summary judgment, and set a hearing date to determine the proper amount of restitution to be paid by claimant. By judgment dated February 28, 2002, the OWC ordered restitution in the amount of $12,828.48 pursuant to LSA-R.S. 23:1208(D).
Claimant appeals, contending that the OWC erred as a matter of fact and law in determining that she had made a willful misrepresentation for the purpose of obtaining workers' compensation benefits *357 and finding that Western Sizzlin was entitled to restitution.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Suarez v. Anderson Industrial Scaffolding, XXXX-XXXX, XXXX-XXXX, p. 1 (La.App. 1st Cir.12/31/02), 837 So.2d 142, 143.
Pursuant to LSA-C.C.P. art. 966(C)(2), if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. Keller v. Case, 99-0424, p. 3 (La.App. 1st Cir.3/31/00), 757 So.2d 920, 922, writ denied, XXXX-XXXX (La.9/29/00), 770 So.2d 354.

WILLFUL MISREPRESENTATION

(Assignment of Error No. 1)
Louisiana Revised Statute 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits, and therefore, generally becomes applicable at the time of an employee's accident or claim. Resweber v. Haroil Construction Company, 94-2708, 94-3138, p. 1 (La.9/5/95), 660 So.2d 7, 9. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. Resweber, 94-2708, 94-3138 at pp. 1-2, 660 So.2d at 9. Moreover, the statute contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. Resweber, 94-2708, 94-3138 at p. 2, 660 So.2d at 9. After considering the evidence introduced herein, we find no error by the OWC in its decision to grant summary judgment or in its application of the anti-fraud provisions of LSA-R.S. 23:1208.
The accident at issue allegedly occurred on September 29, 2000. Notably, when questioned during her deposition regarding her past medical history and treatment, claimant was able to recall and discuss prior hospitalizations and medical treatment as far back as the birth of each of her three (now major) children. However, as set forth in the following colloquy, although she admitted to prior back pain, she stated she could not recall the name of any doctor she had seen. More importantly, she claimed that it had been "several years" since she had seen a doctor for back pain, testifying as follows:
Q. Okay, Ms. McDuffie, have you ever gone to see a doctor about back pain before your accident?
A. I have, but I don't know who. Like with just, probably there at the family clinic.
Q. Okay. When would that have been?
A. I have no idea. It's been several years.
Q. Can you tell me approximately when that would have been? Would it *358 have been more than a year before your accident at the Western Sizzlin?
A. I think so.
However, her medical records disclosed that she had sought and received medical treatment for back pain, specifically on the lower right side, on at least five occasions prior to the accident of September 29, 2000, including a visit shortly before the date of the alleged accident and injury.[4] While claimant eventually explained that the December 19, 1999 and February 9, 2000 complaints of back pain were different and were associated with past kidney infections, she did not disclose that she was seen on August 8, 2000, less than two months prior to the accident, by Dr. Mark Stevens at the Columbia Medical Clinic for complaints of back ache in the lower right region. His report from that visit indicates that at the time, claimant was suffering from: (1) hyperlipidemia; (2) mild recurrent heartburn; and (3) sacroiliitis, the specific condition for which workers compensation benefits were sought.[5]
After the alleged accident, claimant was seen on two occasions, May 22, 2001 and July 3, 2001, by Dr. Bertha Blanchard for follow-up treatment for sacroiliitis and lower back pain. Dr. Blanchard's records indicate that claimant related on those visits that the pain stemmed from the alleged accident of September 29, 2000. Dr. Blanchard's "impressions" from the May 22, 2001 visit note "Chronic back pain secondary to an injury that occurred 9/29/00 with a right sacroilitis (sic) which is causing most of her pain." Dr. Blanchard's notes from the July 3, 2001 visit likewise reflect her diagnosis and treatment of claimant for "right sacroilitis (sic)" and "low back pain." Absent from Dr. Blanchard's records is any indication that she was informed by claimant of the diagnosis of sacroiliitis, prior to the alleged accident, on August 8, 2000 by Dr. Stevens.
Further, contrary to claimant's deposition testimony, her past medical records show that she had suffered from and complained of pain in her back since 1992. Specifically, her 1992 records from the Women's Clinic of Hattiesburg note that she had been experiencing pain in her right side radiating to her leg for the last ten years, since the birth of her last child.
In addition to claimant's medical records, the employer cited interrogatories propounded to claimant and her responses. When asked if claimant had any accidental injuries, disabilities or diseases of any nature, at any time prior to the date of her alleged accident, claimant responded, "None." Further, when asked to give the names and addresses of her family physician and to list the names and addresses of all physicians she had seen (for any purpose) in the past, claimant responded:
I do not actually have a family physician, I only went to a doctor as needed. *359 I have seen different doctors for various reasons (nothing severe) in the past. In the past I have only had normal sickness (nothing severe) such as C-section and tubal in 1981. Tonsillectomy in 1989. Hysterectomy in 1990. Kidney and bladder problems at various times over the years.
As set forth in Resweber, the only requirements for forfeiture of benefits under Section 1208 are: (1) a false statement or representation; (2) willfully made; and (3) for the purpose of obtaining or defeating any benefit or payment. Resweber, 94-2708, 94-3138 at p. 7, 660 So.2d at 12. While claimant argues that her testimony that she "thought" she had not received treatment for her back for more than a year prior to the accident herein, does not rise to the level of a "willful misrepresentation," we disagree. Considering claimant's past medical history as documented in her medical records; her ability to recall her medical history relating back to the birth of her oldest child twenty-four years ago yet seeming inability to recall complaints of back pain and resulting diagnosis of sacroiliitis less than two months prior to the accident; and her failure to admit to or disclose her prior lower back problems in her answers to interrogatories, we find the employer clearly established, by the requisite proof, its entitlement to judgment as a matter of law that claimant made willful misrepresentations of her prior history for the purpose of obtaining benefits. See Hernandez v. ESKCO, Inc., XXXX-XXXX (La.App. 4th Cir.11/15/00), 773 So.2d 865, writ denied, XXXX-XXXX (La.2/9/01), 785 So.2d 824.
Considering the evidence and testimony introduced by the employer, and the absence of any countervailing evidence by claimant to dispute or explain her failure to disclose the prior back problems, summary judgment was properly granted herein. This assignment is without merit.

RESTITUTION

(Assignment of Error No. 2)
In addition to providing for civil penalties, LSA-R.S. 23:1208(D) sets forth that "any person violating the provisions of this Section ... may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct."
On appeal, claimant does not challenge the amount of restitution awarded. Instead, in this assignment of error, she disputes the OWC's conclusion that she made a willful misrepresentation. Having determined that the evidence establishes that claimant's actions in failing to disclose her past treatment and diagnoses for back and hip problems rise to the level of "willful misrepresentation," we affirm the OWC's order that restitution be made to her employer, Western Sizzlin, as set by the OWC. See Dukes v. Sherwood Acres Apartments, 2001-2325 (La.App. 1st Cir.11/08/02), 835 So.2d 742.
This assignment also lacks merit.

CONCLUSION
For the above and foregoing reasons, the judgments granting summary judgment in favor of Western Sizzlin and ordering claimant to make restitution in the amount of $12,828.48 to Western Sizzlin are affirmed. Costs of this appeal are assessed to the claimant/appellant, Donna McDuffie.
AFFIRMED.
NOTES
[1] Judge Philip C. Ciaccio, Fourth Circuit Court of Appeal (retired), is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although not clearly documented in the record, the restaurant was apparently owned by the claimant's former husband.
[3] Louisiana Revised Statute 23:1208 provides in part:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
[4] The pertinent records state:
1/28/92 The Women's Clinic of Hattiesburg"pain in right side radiating to the leg. She states this has
 been going on for the last 10 years. She states it has been going on since the delivery of her
 last child by C section."
2/02/94 Hattiesburg Clinic"Lower back pain > 3wks-4wks"
12/19/99 Wesley Medical Center ER, Dr. Mark Palmeri"pain is worse in her back, greater on the right
 side." (kidney infection)
2/09/00 Marion General Hospital, Dr. Kevin Holmes"pn (sic) both sides, [down] back" "complaints
 radiating down both sides." (kidney infection)
8/08/00 Columbia Family Clinic, Dr. Mark Stevens"complains of back ache. It hurts in the right
 lower back, is worse with range of motion."

[5] "Sacroiliitis" is defined by the PDR Medical Dictionary, First Edition, as inflammation of the sacroiliac joint.