882 So.2d 1228 (2004)
Uluas BROWN, Plaintiff-Appellant
v.
INTERNATIONAL PAPER COMPANY, Defendant-Appellee.
No. 38,892-WCA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 2004.
Rehearing Denied October 21, 2004.
*1229 Sam L. Jenkins, Jr., Shreveport, for Appellant.
Van Hoof Law Firm, by Kathryn Fowler Van Hoof, for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
MOORE, J.
The claimant, Uluas D. Brown, appeals a summary judgment finding that he willfully made false statements in a deposition for the purpose of obtaining compensation benefits and thereby forfeited those benefits under La. R.S. 23:1208 A. For the reasons expressed, we affirm.

Factual Background
Brown was employed as a bin tender in the dry veneer division at the International Paper ("IP") plant in Springhill, Louisiana, *1230 earning an average weekly wage of $458.38. He alleged that on May 1, 2001,[1] he was "straightening vanier [sic] as it came off machine and taking away damaged material when he felt pain in his groin and back." In deposition, he testified it was "like I hit a funny bone," causing immediate severe pain in his groin and lower back. He attempted to work in pain for a few days; he went to the emergency room at Wadley Regional Medical Center in Texarkana on May 10 and again on May 31, where he was diagnosed with acute lumbar pain. Brown has not worked since May 31, 2001. On July 24, 2001, he visited Dr. Brad Harbin in Stamps, Arkansas, complaining of "continuous" back pain since the incident at IP.
On August 16, 2001, Brown was involved in a rear-end collision on Benton Road in Bossier City. The following day he returned to the Wadley emergency room, where he told nurses he was "already under the care of a physician for a back injury and pain was nearly gone until involved in 2 vehicle MVC yesterday" (emphasis added). On August 22, Brown saw a chiropractor, Dr. James Raker, and reported that he felt "good" prior to the auto accident; Dr. Raker later interpreted this as meaning he had "mild" symptoms before August 16, but severe symptoms after. Brown began therapy with Dr. Raker. On August 24, Brown returned to Dr. Harbin, who noted, "worsening due to motor vehicle accident." On October 1, Brown went to Dr. Sharma, a physical medicine specialist in Texarkana. Dr. Sharma's report mentions only the August 16 auto accident, making no reference whatsoever to any prior, work-related condition.
On January 9, 2002, Brown filed the instant disputed claim, alleging that IP had paid no compensation benefits. By amended claim, he demanded indemnity and medical benefits, authorization for medical treatment by a pain care consultant, plus penalties and attorney fees.
In June 2002, IP propounded interrogatories that asked, inter alia, whether Brown had suffered any injuries "subsequent to the accident that is the subject of the compensation claim, and if so, whether he had received medical treatment for it." By unsigned answers, Brown stated he "has not suffered any physical injuries subsequent to the accident which occurred that is the subject of this lawsuit." Through further discovery, however, IP learned of Brown's August 16, 2001 auto accident.
In October 2002, represented by new counsel, Brown prepared supplemental answers to interrogatories, admitting the rear-end collision but stating that "no claim was filed because the attorney he retained to represent him allowed the case to prescribe."
IP took Brown's deposition in December 2002. In the presence of his counsel, Brown admitted he was in the auto accident, "but I didn't claim no injuries." He denied seeing any doctor with complaints of injuries from the auto accident; he advised Dr. Harbin that he had been rear-ended, but insisted he told the doctor, "I feel the same." Brown further testified, "It's the same as the day it happened at International Paper. It never changed." He admitted receiving a settlement for property damage from the other driver's insurer, but made no claim for personal injuries.
*1231 IP pleaded the affirmative defense of fraud and, in August 2003, filed the instant motion for summary judgment. This alleged that Brown forfeited his right to benefits by willfully making a false statement for the purpose of obtaining any benefit or payment. La. R.S. 23:1208 A; Resweber v. Haroil Const. Co., 94-2708 (La.9/5/04), 660 So.2d 7. IP argued that Brown was seeking to recover damages for an injury caused by a non-work-related auto accident which he did not pursue. IP also argued that Brown's false statements under oath at deposition foreclosed any genuine issue of material fact, thus making summary judgment proper. Western Sizzlin Steakhouse v. McDuffie, 02-0935 (La.App. 1 Cir. 3/28/03), 844 So.2d 355, writ denied, XXXX-XXXX (La.6/20/03), 847 So.2d 1236. IP also demanded sanctions under La. R.S. 23:1208 D.
Brown opposed the motion, admitting the August 2001 auto accident but arguing that the medical records would show that his current disability resulted from the accident at IP, not from the gentle rear-end collision on Benton Road. He also urged that his original answers to interrogatories, denying the auto accident, had been prepared by his first attorney, and that Brown himself had never read or signed them. Further opposing the motion for summary judgment, Brown attached copies of his original and amended answers to interrogatories, a copy of his deposition, records and bills from the various physicians he has seen since May 1, 2001, and a copy of the police report from the auto accident.
The parties submitted the matter on briefs. By oral ruling of December 23, 2003, the WCJ found that Brown falsely stated in deposition that he told doctors about the auto accident shortly after it occurred and that he felt the same before and after the wreck. The WCJ cited the Wadley emergency room report, Dr. Harbin's reports and Dr. Sharma's letter as contradicting this position. The WCJ found these statements were willful because his counsel was present and yet "Mr. Brown repeatedly stated that he had not sought treatment and that he had never claimed to be injured in the accident." The WCJ concluded the only reason Brown had to deny he was injured in the auto accident "was so it would not interfere with his workers' compensation claim." The court therefore granted summary judgment, finding a forfeiture of benefits. The WCJ stated, however, that it would not base its judgment on the false statements made in Brown's answers to interrogatories because Brown did not sign them. Finally, the WCJ denied IP's claim for reimbursement.
Represented by new counsel, Brown has appealed.

The Parties' Contentions
By one assignment of error, Brown urges that IP did not carry its burden of proof under R.S. 23:1208 A on the motion for summary judgment. He contends that the three items of evidence cited by the WCJ should be construed more favorably to him. He further contends that his "first opportunity to provide a full explanation about his symptoms was his deposition," which leaves open the genuine issue of material fact whether the auto accident did or did not aggravate his genuine, work-related injury.
IP reiterates its arguments in support of the motion for summary judgment. It contends that lying in a deposition justified a summary judgment of forfeiture of benefits in Western Sizzlin Steakhouse v. McDuffie, supra. It also urges that Brown's repeated false statements in deposition are similar to those that warranted forfeiture of benefits in Jim Walter Homes Inc. v. Prine, 01-0116 (La.App. 1 Cir. *1232 2/15/02), 808 So.2d 818, and a reversal of benefits in Allen v. Housing Auth. of New Orleans, 01-0370 (La.App. 4 Cir. 1/9/02), 806 So.2d 889, writ granted, XXXX-XXXX (La.6/7/02), 818 So.2d 764. IP concludes with an argument for penalties and sanctions under R.S. 23:1208 C and D.

Applicable Law
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Jones v. Airport Systems Int'l, 28,278 (La.App. 2 Cir. 4/3/96), 671 So.2d 1176. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Racine v. Moon's Towing, 2001-2837 (La.5/14/02), 817 So.2d 21. The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. Since the 1996 and 1997 amendments to Art. 966, the courts are to assess the proof submitted by the parties equally, without any presumption in favor of trial on the merits. Jones v. Estate of Santiago, XXXX-XXXX (La.4/14/04), 870 So.2d 1002; Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606. Appellate review of a grant or denial of a motion for summary judgment is de novo. Jones v. Estate of Santiago, supra. Summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge or malice, yet it may be granted on a subjective issue when no issue of material fact exists concerning that issue. Id.; Smith v. Our Lady of the Lake Hosp., 93-2512 (La.9/5/94), 639 So.2d 730.
The Workers' Compensation Act imposes penalties for willfully making a false representation in connection with a compensation claim. La. R.S. 23:1208 provides, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
The requirements for forfeiture of benefits are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 660 So.2d at 12; Smalley v. Integrity Inc., 31,247 (La.App. 2 Cir. 12/9/98), 722 So.2d 332, writ denied, 99-0072 (La.3/19/99), 739 So.2d 782. The employer is not required to show that it was prejudiced by the false statement or misrepresentation. Resweber v. Haroil Const. Co., 660 So.2d at 12; Varnado v. Winn-Dixie La. Inc., 98-0301 (La.App. 1 Cir. 9/25/98), 720 So.2d 66.

Discussion
The issue is whether the summary judgment evidence is sufficient to show that Brown willfully made a misrepresentation or false statement in his deposition for the purpose of obtaining compensation benefits. For purposes of de novo review, we accept as true Brown's allegations that he sustained a work-related injury on May 1, 2001, that he sought treatment from *1233 Wadley Regional Medical Center on two occasions in May 2001 and from Dr. Harbin in July 2001, and that he was then involved in a rear-end collision in Bossier City on August 16, 2001.
Brown's statements to health care providers shortly after the rear-end collision were fairly consistent. A handwritten "assessment" on the Wadley emergency room report states he was "already under the care of a physician for a back injury and pain was nearly gone until involved in 2 vehicle MVC yesterday." Five days later, Brown sought treatment from a chiropractor, Dr. Raker, whose handwritten history reports that after the rear-end collision, "Patient's neck, mid and lower back pain started immediately," had grown worse in the intervening days, and he "was feeling good before accident." Dr. Raker prescribed physical therapy, three times a week for 12 weeks, and later referred him to Dr. Sharma, a physical medicine and rehabilitation specialist. Dr. Sharma's two-page report states, "The patient was apparently involved in an automobile accident on August 16, when * * * he was rear ended from behind on Benton Road." With no report of any prior injury, Dr. Sharma also writes, "He reports that he has never had this kind of pain before."
In brief, Brown contends that these documents are not as conclusive as they appear, as Dr. Sharma referred to "continued" low back pain; however, he obviously meant the pain had continued for six weeks since the rear-end collision. Brown also shows that nearly two years later, in March 2003, Dr. Raker clarified his initial report by letter stating that he later learned of Brown's May 1 injury, and when he originally said Brown's condition was "good" prior to August 16, it meant "mild pain or problems." This letter, however, does not refute that in his initial visit on August 22, 2001, Brown did not consider the prior injury serious enough to report to Dr. Raker. Brown also cites Dr. Harbin's report of August 24, 2001, which reflects "continuous" back pain of two months' duration, worsening after the rear-end collision. Although Dr. Harbin's report is inconsistent with the other medical evidence, it does not alter the fact that Brown misrepresented his condition statements to other health care providers.
Assessing these documents fairly, without any presumption in favor of trial on the merits, C.C.P. art. 966 A(2), we find that Brown sought medical treatment with at least three health care providers in the six weeks after the rear-end collision, telling emergency room personnel that his prior back injury had virtually resolved by August 16 and reporting no prior injury to Drs. Raker and Sharma.
At his deposition in December 2002, Brown gave a totally different account of his condition before and actions after the rear-end collision. He admitted he was in the accident, but said he suffered no injuries. On examination by IP's counsel, he stood by this claim:
Q Did I understand you correctly that you were not injured in the automobile accident of August 16, 2001?
A No. I claimed no injuries.
Q Were you injured in the automobile accident of August 16, 2001?
A Not to my knowledge.
Q Did you see a physician after August 16, 2001, with any complaints of any injuries as a result of that automobile accident?
A No ma'am.
Q After August 16, 2001, you never complained to any doctor that you had an injury in that automobile accident?
A No, ma'am.
*1234 Brown then admitted reporting the auto accident to Dr. Harbin but maintained it had no effect on his pre-existing condition:
Q After your automobile accident, are you saying that you still felt the same type of groin problem and back problem that you had always felt after your injury at IP, and there had been no change?
A That's correct. There had been no change in feeling the pain.
Q Did your back pain worsen at all after your automobile accident?
A No, ma'am. It's the same as the day it happened at International Paper. It never changed.
He further admitted that he retained an attorney and received about $1,300 for property damage to his car, but made no claim for personal injuries.[2] Later in the deposition, he described his initial visit with Dr. Raker:
Q Did you complain to Dr. Raker of any back problem that resulted from that automobile injury?
A I told him I got hurt on the job, but I had been hit from a car accident. I told him that, and he asked me if any  if I had any injuries afterwards, and I told him it was the same since the job injury.
Q Again, I don't want to put words in your mouth, Mr. Brown, but are you saying you did not complain to Dr. Raker of any back problems that resulted from the automobile accident?
A I didn't. No, ma'am. No, ma'am.
Q You did not complain to Dr. Raker of any back problem that resulted from the automobile accident, is that correct?
A That's correct.
The medical records from the Wadley emergency room and from Drs. Raker and Sharma contradict Brown's numerous statements in deposition that the automobile accident resulted neither in injury nor in any effort to seek medical treatment. The records are prejudicial to his compensation claim, as they strongly suggest the work-related back injury was resolved before the rear-end collision. On this evidence, the only reasonable conclusion is that in deposition Brown misrepresented both his physical condition just prior to the rear-end collision and his course of medical treatment afterward, for the purpose of obtaining compensation benefits. This satisfies two of the three requirements for forfeiture of benefits under R.S. 23:1208 A. Western Sizzlin Steakhouse v. McDuffie, supra; Allen v. Housing Auth. of New Orleans, supra; Bass v. Allen Cannery Co., 30,635 (La.App. 2 Cir. 6/26/98), 715 So.2d 142, writ denied, 98-2069 (La.11/6/98), 728 So.2d 395.
The remaining requirement is that the misrepresentations or false statements must be willfully made. We are mindful that forfeiture is a harsh remedy and must be strictly construed. Wise v. J.E. Merit Constructors Inc., 97-0684 (La.1/21/98), 707 So.2d 1214; Smalley v. Integrity Inc., supra. An inadvertent and inconsequential false statement would not result in the forfeiture of benefits. Resweber v. Haroil Const. Co., supra; Rosson v. Rust Constructors Inc., 32,789 (La.App. 2 Cir. 3/1/00), 754 So.2d 324, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1105. Moreover, intent is a subjective fact often unsuited to summary judgment disposition. Jones v. Estate of Santiago, supra.
*1235 In deposition, Brown repeatedly denied facts that were plain in the medical records: that his work-related injury had resolved before the rear-end collision, that he was injured in the collision, that he sought treatment for those injuries, and that he disclosed his prior condition to Dr. Raker. The persistence of these misrepresentations, made under oath and in the presence of his own counsel, forecloses the hypothesis that they were inadvertent or inconsequential. Simply put, the summary judgment evidence excludes any genuine issue as to whether the statements were willfully made, and proves that IP is entitled to a judgment of forfeiture as a matter of law, in accord with R.S. 23:1208 A and E. The judgment will therefore be affirmed.
In brief, IP urges that Brown should be subject to the additional sanctions of penalties and restitution of benefits paid, under R.S. 23:1208 C and D and La. C.C.P. art. 863. Because IP neither appealed nor answered the appeal, this court will not entertain its claim for additional relief. La. C.C.P. art. 2133; Walker v. Clarendon Nat'l Ins. Co., 2001-2338 (La.12/14/01), 802 So.2d 1285; Sport Tech Inc. v. SFI Mfg. Inc., 36,413 (La.App. 2 Cir. 12/20/02), 838 So.2d 807, writ denied, XXXX-XXXX (La.4/25/03), 842 So.2d 405.

Conclusion
For the reasons expressed, the judgment is affirmed. Court costs are assessed against the claimant, Uluas Brown, to the extent permitted by La. C.C.P. arts. 5186 and 5188.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent to the majority's ruling in this summary judgment context. In my view, the plaintiff's testimony in his deposition indicates only a credibility problem on this cold record which is different from the harsh penalty of forfeiture under Section 1208 of the Workers' Compensation Act and which requires the workers' compensation judge to hear testimony before deciding.
In Brown's deposition, he first claimed that IP ignored his work-related accident for many days before allowing him to see a company nurse. He claimed that after he was advised by the nurse to see his personal physician, he missed a few days of work upon the doctor's advice. Upon his return to IP with his medical diagnosis from the doctor, Brown claims that he was advised by a supervisor that IP considered him to have "voluntarily quit" because of his absence from work. This prompted a heated exchange. Brown left without ever receiving any workers' compensation from the company for the two to three month period he claimed disability before the August, 2001, automobile accident ever occurred.
The misrepresentation of Section 1208(A) which triggers forfeiture must be "for the purpose of obtaining or defeating any benefit" under the Act. At the time of Brown's deposition, IP already knew about the automobile accident, and Brown knew that IP knew. This is therefore not a case where the employee hides an important fact from the employer by denying it ever occurred. Brown knew in advance that his employer, who had not paid him anything for 18 months, was taking the position that his automobile accident served as continued justification for its obstinance. In whatever manner he attempted to characterize the automobile accident and its effect on his back injury, he could not have expected, nor had "the purpose of obtaining," anything from IP.
*1236 In the deposition, the topic of the automobile accident first came up with the following question and answer:
Q. After your injury at I.P. on May 1st of 2001, did you have any other injuries?
A. I wasn't injured. I was in an automobile accident, but I didn't claim no injuries.
Even if considered as misleading, this obviously defensive response did, nevertheless, volunteer the fact of the accident. Thereafter, the many and varied responses of Brown can be read in different ways. He can be interpreted as denying injury from the accident. He can also be interpreted as asserting that the automobile accident exacerbated his existing condition. What is clear is that Brown is an under-educated person, who, when challenged in a deposition by his employer's attorney, took a defensive and medically complicated position that his second accident did not cause his present state of disability.
Causation for back injuries can be a very difficult problem for medical professionals to sort out. Some injured employees, disgruntled with their employer's conduct in denying workers' compensation benefits, do testify to the nature and cause of their symptoms in a defensive manner and with a bias that requires their credibility to be greatly, if not entirely, discounted. This type of causation dispute and credibility problem is not the subject matter of Section 1208(A) of the Act, in my opinion, and certainly is not to be resolved through a motion for summary judgment.
IP's motion for summary judgment does not factually dispute (i) Brown's claim for a work-related injury; (ii) his version of his dismissal from the company; and (iii) his disability that prevented employment during the three months before the August automobile accident. Brown's contradictory and defensive assertions may cause the workers' compensation judge, after hearing Brown's testimony at trial, to deny his claim for disability benefits after the August accident, and that credibility decision will produce consequences similar to the present ruling for the denial of workers' compensation benefits. Nevertheless, such credibility determination should not be transformed into the forfeiture penalty of Section 1208(A) and decided by the workers' compensation judge on a summary judgment without hearing this claimant and his doctors testify.
APPLICATION FOR REHEARING
Before STEWART, GASKINS, CARAWAY, DREW, and MOORE, JJ.
Rehearing denied.
STEWART and CARAWAY, JJ., would grant rehearing.
NOTES
[1] The disputed claim form lists the date of accident as May 1, 2001; however, the employer's report of injury or illness is dated May 30, 2001, and in many of his pleadings, including the appellate brief, Brown says it was May 4, 2001.
[2] In supplemental answers to interrogatories, he stated that his attorney allowed the case to prescribe.