GASKINS, J.
hThe defendants, David W. Hall and Ruby A. Newell, appeal the declaratory judgment rendered by the trial court determining the interest due under a previously rendered money judgment burden *965 ing the property of Twin Branches Real Estate, LLC (“Twin Branches”) as a judicial mortgage. For the reasons assigned below, we affirm the trial court judgment.
FACTS
The question before us is whether interest runs from the date of a judgment rendered in Texas (hereinafter referred to as the “Texas Judgment”) or from the date of the Louisiana judgment that made the Texas Judgment executory (hereinafter referred to as the “Louisiana Judgment”). After the executory judgment was rendered, it was filed in the mortgage records affecting a lien on the property owned by the original debtors. Through a series of transactions, David W. Hall and Ruby A. Newell now stand in the place of the original creditors, and Twin Branches now owns the encumbered property. In the process of paying off the mortgage, the parties dispute from which date interest should be calculated, the original Texas Judgment or the executory Louisiana Judgment.
The Louisiana Judgment was a result of an action by Tristar Developers, Inc. to have a Texas money judgment,, rendered on December 11, 1981, made executory by the 26th Judicial District Court (JDC). The substantive portion of the Louisiana Judgment, which was rendered on August 1,1985, reads as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of petitioner, TRIS-TAR DEVELOPERS, INC., and against defendants, JOEL H. SIMMONS and JUDITH MOULTON SIMMONS, husband Land wife, recognizing the judgment of the 150th Judicial District Court in and for Bexar County, Texas, in proceedings styled, “Republicbank San Antonio, National Association v. Bidco, Inc., Nick Simon and Joel Simmons ”, Number 81-CI-17526, rendered and signed on the 11th day of December, 1981, further recognizing the assignment of said judgment to petitioner herein, and making said judgment the judgment of this Honorable Court, and accordingly there be judgment herein in favor of petitioner, TRISTAR DEVELOPERS, INC. and against defendants, JOEL H. SIMMONS and JUDITH MOULTON SIMMONS, husband and wife, in the full, true and correct sum of TWO HUNDRED TWENTY-NINE THOUSAND SIX HUNDRED NINETY-ONE AND 27/100 ($229,691.27) DOLLARS, with interest thereon at the contractual and lawful rate of ten (10%) per cent per annum from date of this judgment until paid, together with a reasonable attorney’s fee of TWENTY THOUSAND SEVEN HUNDRED FORTY FIVE AND NO/100 ($20,745.00) DOLLARS with interest thereon at the statutory rate of nine (9%) percent per annum from the date of judgment until paid; together with all costs in and for the proceedings in the 150th Judicial District Court in and for Bexar County, Texas, and for all costs of these proceedings. [Emphasis added.]
In a prior suit to determine whether the above-referenced judgment of the 26th JDC constituted a judicial mortgage over Twin Branches’ property, the matter was submitted on a joint stipulation of facts, including the following stipulation regarding the exact amounts owed under the judgment as of August 1,1998 [1]:
*966 Assuming the correctness of the matters asserted in the affidavits described in paragraph 16, the [Louisiana Judgment] presently has a balance due of $229,691.27 in principal, together with interest in said principal balance accrued through August 1, 1998, totaling $298,598.65, interest on the unpaid principal balance of the [Louisiana Judgment] from that date until paid at the rate of 10% per annum, attorney fees in the amount of $20,745.00, interest accrued on the award of attorney fees through August 1, 1998, totaling $24,271.65, interest thereafter on said award of attorney fees until paid at 13the rate of nine percent (9%) per annum, and court costs totaling $363.52.[2]
In an unpublished opinion in Hall v. Bates, 33,988 (La.App.2d Cir.11/1/00), 775 So.2d 708, writ denied, 2000-3534 (La.3/16/01), 787 So.2d 310, this court recognized the judicial mortgage in favor of Hall and Newell. After this court’s decision became final, Twin Branches tendered payment to Hall and Newell on April 3, 2001, in the amount of $640,442.82 which it alleges was the total amount due in principal and interest on the Louisiana Judgment. Hall and Newell, however, would not accept this tender in full satisfaction of the judgment, asserting that it was insufficient by approximately $90,000.00. The discrepancy arose out of the parties’ disagreement as to what date interest began to accrue under the Louisiana Judgment, i.e., the date the Louisiana Judgment was rendered (August 1, 1985) or the date the Texas Judgment was rendered (December 11,1981).
The parties agreed that Hall and Newell would take the $640,442.82 in satisfaction of the principal amount of the judgment plus interest which had accrued at least since August 1, 1985. Twin Branches would also deposit $90,294.67 into an interest-bearing escrow account to be controlled by a mutually agreed-upon escrow agent; this sum represented the amount of interest which would have accrued between December 11, 1981, and August 1, 1985. The parties then agreed to submit the dispute to a court of competent jurisdiction and to distribute the funds out of the escrow account in accordance with a final judgment rendered therein.
l40n June 11, 2001, Twin Branches filed a petition for declaratory- judgment in the 26th JDC seeking a judicial declaration that no additional sums were due Hall and Newell under the Louisiana Judgment and that it was entitled to the escrowed funds. On June 25, 2002, after the filing of Hall and Newell’s answer, Twin Branches filed a motion for summary judgment asserting the absence of any genuine issues of material fact which precluded judgment as prayed for in its petition. On September 3, 2002, Hall and Newell responded by filing their own motion for summary judgment and a reconventional demand seeking a declaration that they are entitled to interest on the Louisiana Judgment beginning on December 11,1981.
Before the court for consideration in support of and in opposition to the cross-motions for summary judgment were the following: (1) the Louisiana Judgment; (2) the Texas Judgment; (3) the deposition testimony of the attorney for Tristar Developers, Inc., in the suit to have the foreign judgment made executory in Louisiana and the author of the Louisiana Judgment; and (4) the “Stipulation of Facts” submitted in Hall and Newell’s pri- or suit to have the judicial mortgage on *967 the property now owned by Twin Branches recognized.
Twin Branches’ motion for summary judgment was heard on September 5, 2002, and Hall and Newell’s motion for summary judgment was heard on February 10, 2005.[3] After hearing oral arguments, the trial | scourt concluded that the reference to “date of this judgment” as the commencement date for the accrual of interest could only fairly be interpreted to mean the date of the Louisiana Judgment in which the reference was made. Consequently, it granted Twin Branches’ motion for summary judgment and denied Hall and New-ell’s motion for summary judgment. A written judgment ordering the payment of the escrowed funds to Twin Branches was signed on May 26, 2005. The instant appeal followed.
DISCUSSION
Hall and Newell argue on appeal that the trial court erred in interpreting the Louisiana Judgment as limiting the accrual of interest from the date of the Louisiana Judgment, and not from the date of the underlying Texas Judgment.
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Brown v. International Paper Company, 38,892 (La.App.2d Cir.9/22/04), 882 So.2d 1228, writ denied, 2004-2865 (La.1/28/05), 893 So.2d 78. Appellate courts review grants of summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law: Ocean Energy, Inc. v. Plaquemines Parish Government, 2004-0066 (La.7/6/04), 880 So.2d 1. To the extent-that an- action presents only a question of law, the matter is ripe for resolution via a motion for summary judgment. In Re Succession of Terral, 39,554 (La.App.2d Cir.4/6/05), 900 So.2d 272.
|fiA judicial mortgage is created by the filing of a judgment with the recorder of mortgages thereby establishing a general mortgage over the property that the obligor owns at the time of filing and over any future property at the time he acquires, it. La. C.C. arts. 3300 and 3303. Once property is so encumbered, it cannot be transferred to the prejudice of the mortgage. La. C.C. art. 3307(2). Such mortgages are to be interpreted as recorded in the public records registry without reference to extraneous evidence. The basic reasoning on which this rule is based was set forth in Graves v. Hunter, 23 La.Ann. 132 (La.1871) as follows:
Third persons, it has been frequently determined by this court, are not required to look beyond the registry. Although judgments are interpreted by the pleadings and nature of the obligation sued on; yet we apprehend that, when'they are placed upon the public records to serve the purpose of judicial mortgages, they are to be interpreted only as they stand recorded in the mortgage book, as provided by law. If third parties were required to go to the courts where judgments were rendered and inspect the pleadings and nature of each case in order to determine the true character and extent of the judgment record *968 ed to operate as a judicial mortgage, a deplorable state of things would exist, and such as surely was never intended. And the rights of individuals would be rendered insecure and precarious in the extreme if recorded instruments, having a meaning accepted and understood by the world, should at a subsequent period by resort, had to other instruments, be given an entirely different meaning. Mortgages can not [sic ] be extended by implication. They are construed strictly. In the construction of instruments which are placed upon the records of the country and to be obligatory upon third parties as to what they express and are intended to make known, their language should be clear, explicit, unambiguous, and their purport free from doubt. Nothing is left to inference or deduction.
Accordingly, because the only judgment recorded in the public records is the Louisiana Judgment, we will discuss only that judgment’s provisions in determining when interest began to run. Because this determination is |7made on the basis of that which is contained within the “four corners” of the Louisiana Judgment, we find this issue is properly addressed on a motion for summary judgment.
The Louisiana Judgment recognizes the existence of the Texas Judgment and its date of rendering and then indicates that the Texas Judgment is made a judgment of the Louisiana court. It recites the sum of the principal award with “interest thereon at the contractual and lawful rate ... from date of this judgment until paid” and the sum of the attorney’s fee award with “interest thereon at the statutory rate ... from the date of judgment until paid.”
Hall and Newell argue that the reference to “this judgment” in the Louisiana Judgment when indicating the date from which interest on the principal award runs can and should be interpreted as a reference to the Texas Judgment. In supporting that assertion, they argue that the Louisiana Judgment’s reference to statutory interest rates of 9 percent on the attorney’s fee award and contractual interest rate of 10 percent on the principal award are clearly references to the Texas Judgment which contained identical provisions. Furthermore, the Louisiana litigation was limited to making a foreign judgment exec-utory and, thus, the Louisiana court would not have been privy to any contractual interest rate provisions. Also, Hall and Newell argue that, as to the attorney fees, the Louisiana statutory interest rate at the time the judgment was rendered was 12 percent, not 9 percent. Accordingly, the Louisiana Judgment was clearly making reference to the Texas Judgment |Rand, therefore, the interest provision should be interpreted to run from the date of the latter. We find this argument unpersuasive.
The appellants’ argument centers on a point which is not in dispute, i.e., that the substance of the award contained in the Louisiana Judgment is derived from the Texas Judgment. The Louisiana Judgment, however, also unequivocally provides that interest on the principal award is to run from the date of “this judgment.” These words as used in the August 1,1985, judgment are not ambiguous. The words “this judgment” clearly refer to the Louisiana Judgment and come after the Louisiana Judgment was pronounced.[4] While *969 there are two potential judgments to which reference could be made, the phrase “this judgment” is a reference to the judgment which is nearer in time, space and/or thought; in this case, that is clearly the Louisiana Judgment in which the words appear. While such a reference may have been in error, any other interpretation would constitute a substantive modification of the judgment which is expressly prohibited. La. C.C.P. art.1951; Stevenson v. State Farm, 624 So.2d 28 (La.App. 2d Cir. 1993). The proper remedy in the event of such an error was for the aggrieved party to have either filed a motion for new trial, or taken an appeal, neither of which was done.
13We are also unpersuaded by the argument that this Court has already interpreted the provision in its prior decision in this matter and concluded that interest was to run from December 11, 1981, the date of rendering of the Texas Judgment. The appellants rely on footnote 1 in that opinion which reads as follows:
The [Louisiana Judgment] recognized the Texas judgment which decreed that the Simmons were indebted to TriStar in the principal amount of $229,691.27 with interest thereon at a rate of 10% per annum from December 11, 1981 (the date of the Texas judgment), until paid, together with attorney fees in the amount of $20,745.00, with interest thereon at a rate of 9% per annum from December 11, 1981 until paid.
The footnote is merely an elaboration on the recitation of facts in the main body of the opinion and, therefore, does not constitute a “finding” of the court. Furthermore, its content does not stand for the proposition set forth by the appellants. The footnote merely states what was provided by the Texas Judgment, which was being made executory. Neither party disputes that the Texas Judgment provided that interest was to run from December 11, 1981. As noted above, however, that judgment does not govern here.
CONCLUSION
The judgment of the trial court granting summary judgment in favor of Twin Branches Real Estate is affirmed. Costs of this appeal are assessed against the appellants.
AFFIRMED.

. All of the parties in the instant suit were parties in the prior suit and agreed to the stipulations.

. In brief, Hall and Newell concede that it is "mathematically obvious" that in this stipulation, interest was calculated as accruing from August 1, 1985, not December 11, 1981.

. The September 5, 2002, hearing was conducted before the Honorable Cecil Campbell who took the matter under advisement. However, Judge Campbell retired before rendering a decision and, therefore, the motion was still pending when Hall and Newell’s motion came for hearing before the Honorable Jeff Cox on February 10, 2005. At the conclusion of this later hearing, Judge Cox rendered judgment on both motions.

. In relevant part, the judgment states:
[AJccordingly there be judgment herein in favor of petitioner, TRISTAR DEVELOPERS, INC. and against defendants, .JOEL H. SIMMONS and JUDITH MOULTON SIMMONS, husband and wife, in the full, true and correct sum of TWO HUNDRED TWENTY-NINE THOUSAND SIX HUN *969 DRED NINETY-ONE AND 27/100 ($229,-691.27) DOLLARS, with interest thereon at the contractual and lawful rate of ten (10%) per cent per annum from date of this judgment until paid, together with a reasonable attorney’s fee of TWENTY THOUSAND SEVEN HUNDRED FORTY FIVE AND NO/100 ($20,745.00) DOLLARS with interest thereon at the statutory rate of nine (9%) per cent per annum from the date of judgment until paid.... [Emphasis added.]